**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| **KIMBERLY PANIAN** and<br><br>**HOI YEE BAXTER**,<br><br>       Plaintiffs,<br>v.<br><br>**TODD W. BLANCHE**, in his official capacity as Acting Attorney General of the United States,<br><br>       Defendant. | **Case No. __-cv-_____** |

**<u>CLASS ACTION COMPLAINT</u>**
**<u>JURY TRIAL DEMANDED</u>**

**INTRODUCTION**

1. In passing the Rehabilitation Act of 1973, the first federal civil rights legislation to protect people with disabilities, Congress explained that "disability is a natural part of the human experience and in no way diminishes the right of individuals to . . . contribute to society" and "pursue meaningful careers." 29 U.S.C. § 701(a)(3). However, Congress recognized that "individuals with disabilities continually encounter various forms of discrimination in such critical areas as employment." *Id.* § 701(a)(5). Congress accordingly endorsed "the goal of providing individuals with disabilities with the tools necessary to . . . achieve equality of opportunity" and "full inclusion and integration" in employment. *Id.* § 701(a)(6). Since then, the federal government has traditionally sought to lead by example, developing robust policies and practices designed to comply with law and ensure the inclusion of workers with disabilities.

2. These policies and practices ensured that federal employees like Plaintiffs Kimberly Panian and Hoi Yee Baxter – both employees of the Executive Office of Immigration Review ("EOIR") – could serve their country and support themselves and their families. Ms. Panian, who has a rare combination of disabilities including Type I diabetes that causes severe and rapid swings in blood sugar and severe migraines with aura that can present as strokes (which cause excruciating pain, nausea and vomiting, loss of feeling in her fingers, sudden loss of vision, and disorientation), has relied on telework to accommodate her disabilities since 2020.

3. Likewise, Ms. Baxter, who is severely immunocompromised due to her Stage IV lung cancer and treatment, relied on EOIR's grant of telework accommodations to work from home and avoid exposure to ordinary pathogens and germs that could, given her disability, land her in the hospital. These telework reasonable accommodations allowed Ms. Panian and Ms. Baxter, and other federal employees, to maintain their employment (and, for Ms. Panian and Ms. Baxter,

1

receive excellent performance evaluations) while ensuring that they did not have to choose between their livelihoods and their health.

4. This changed in the spring of 2025. Following President Trump's directive that agencies should "require employees to return to work in-person," Presidential Memorandum of January 20, 2025, Return to In-Person Work, 90 Fed. Reg. 8251 (Jan. 20, 2025) ("Return to Work Memorandum"), EOIR announced that it would take a "closer look" at employees with disabilities who relied on telework reasonable accommodations.

5. In actuality, EOIR adopted a policy and practice of predetermining that telework accommodations are never appropriate and refusing to engage in a good-faith reasonable accommodation process when such accommodations are requested (the "No Telework Accommodations Policy and Practice" or "Policy and Practice").

6. Since April 2025, on information and belief, EOIR has approved no telework accommodations. A high-ranking EOIR official has advised employees that, regarding telework accommodations, EOIR was "doing that before but now we're not." Instead, when employees request telework to reasonably accommodate their disabilities, EOIR engages in a sham process in which the result – denial of telework accommodations – is preordained.

7. After EOIR adopted the No Telework Accommodations Policy and Practice, EOIR denied Ms. Panian's and Ms. Baxter's requests to continue teleworking as a reasonable accommodation. The agency did not justify or explain its change in position. Nor did it propose other effective accommodations, identify any legitimate deficiencies in their medical documentation, or point to any undue hardship to the agency attendant to their requests.

8. EOIR refused to allow Ms. Baxter to continue to telework under a reasonable accommodation, even though EOIR's refusal will expose Ms. Baxter to pathogens that, given her

Stage IV cancer and compromised immune system, may come at the expense of her life. Likewise, EOIR's denial of telework reasonable accommodations for Ms. Panian means that if she continues working, she must do so without reliable access to her medical equipment and immediate medical assistance. At her on-site workplace, such access is severely restricted given the limited cell service, lack of trained individuals to help her in an emergency, and secured gates throughout the building that often malfunction and could prevent emergency responders from reaching her.

9. Ms. Panian and Ms. Baxter's experiences are not unique. Numerous other EOIR employees who requested telework as a reasonable accommodation (the "Class Members") have likewise been denied access to a good-faith reasonable accommodation process. Instead, pursuant to EOIR's Policy and Practice, EOIR has replaced the legally mandated, good-faith, interactive process to address reasonable accommodations with a box-checking exercise that predetermines no employee will get a telework reasonable accommodation. The agency has consistently and repeatedly denied telework to employees who requested it as a reasonable accommodation.

10. The No Telework Accommodations Policy and Practice forces Class Members to choose between endangering their health by performing their duties in person or preserving their health and losing their jobs, livelihoods, and health insurance. For some Class Members, like Ms. Panian and Ms. Baxter, such a choice also means endangering their lives.

11. EOIR's No Telework Accommodations Policy and Practice violates Section 501 of the Rehabilitation Act ("Section 501"), which prohibits discrimination on the basis of disability in federal employment and requires federal agencies to provide reasonable accommodations for employees with disabilities. An agency may not predetermine that a particular accommodation is not reasonable.

3

12. Plaintiffs bring this suit on behalf of themselves, and others similarly situated, to enjoin this unlawful Policy and Practice and to vindicate their rights under Section 501 of the Rehabilitation Act to continue to serve their country without jeopardizing their health or their lives.

**PARTIES**

13. Plaintiff Kimberly Panian has worked for EOIR since 2018 and is currently an Attorney-Advisor at the Otay Mesa Immigration Court in San Diego, California, which operates under EOIR's Office of the Chief Immigration Judge ("OCIJ"). OCIJ oversees the administration of immigration courts nationwide and exercises administrative supervision over Immigration Judges. Ms. Panian has Type I diabetes that causes severe and rapid swings between hyper- and hypoglycemia. She also experiences severe migraines with aura that can present as strokes and cause excruciating pain, severe nausea and vomiting, sudden loss of vision and feeling in her fingers, and disorientation with slurred speech. She is therefore an individual with a disability as defined in the Rehabilitation Act of 1973. 29 U.S.C. § 705(20)(B). She resides in Spring Valley, California.

14. Plaintiff Hoi Yee Baxter has worked for EOIR since 2018 and is currently an Attorney-Advisor for the Legal Education and Research Services Division ("LERS") within EOIR's Office of Policy ("OP").[1] LERS develops and coordinates legal training and professional development for Immigration Judges, attorneys, and others within EOIR. Ms. Baxter has Stage IV lung cancer, for which she is receiving treatment, and is therefore an individual with a disability as defined in the Rehabilitation Act of 1973. 29 U.S.C. § 705(20)(B). She resides in San Antonio, Texas.

15. Defendant Todd Blanche is the Acting Attorney General of the United States and is responsible for overseeing and running the U.S. Department of Justice ("DOJ"). EOIR is a

---

[1] Ms. Baxter also goes by the name Cherry Baxter in her personal life.

component agency of DOJ. Acting Attorney General Blanche is sued in his official capacity. 29 U.S.C. § 794a(a)(1); 42 U.S.C. § 2000e-16(c).

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

17. Venue is proper in the United States District Court for the Eastern District of Virginia pursuant to 42 U.S.C. § 2000e-5(f)(3) because EOIR's unlawful employment practice is being committed there and the employment records relevant to EOIR's unlawful employment practice are maintained and administered there. Venue is proper in this division for the same reason. *See* Local Civil Rule 3(C).

## ADMINISTRATIVE EXHAUSTION

18. Plaintiffs Kimberly Panian and Hoi Yee Baxter have exhausted all available administrative processes.

19. On May 8, 2025, Ms. Panian timely contacted EOIR's Equal Employment Opportunity ("EEO") office to initiate counseling.

20. On July 1, 2025, Ms. Panian received notice from the EEO office that she could file a formal complaint.

21. On July 13, 2025, Ms. Panian timely filed a formal individual and class complaint.

22. EOIR transmitted Ms. Panian's complaint to the Equal Employment Opportunity Commission ("EEOC") on August 20, 2025, for adjudication of the class certification issue.

23. As of June 3, 2026, the EEOC has not issued a decision regarding whether her case should proceed as a class.

24. As of at least December 10, 2025, the EEOC has instructed its administrative judges not to process any class claims. Consequently, Ms. Panian's case is not being processed.

25. It has been more than 180 days since Ms. Panian filed a class claim with the EEOC. She has thus exhausted her administrative remedies and may file a class action lawsuit in federal court. 29 C.F.R. § 1614.407.

26. On January 27, 2026, Ms. Baxter timely contacted EOIR's EEO office to initiate counseling.

27. On February 26, 2026, Ms. Baxter received notice from the EEO office that she could file a formal complaint.

28. On February 26, 2026, Ms. Baxter timely filed a formal individual and class complaint with the EEOC.

29. Where an employee files a federal sector class complaint, EEOC guidance instructs agencies to hold subsequently filed complaints in abeyance during the pendency of the EEOC's decision to accept or reject the class complaint.[2] As such, Ms. Baxter's formal complaint is being held in abeyance because of Ms. Panian's earlier filed class complaint. Ms. Panian's class complaint, however, is not being processed due to the EEOC's instruction to administrative judges to not process any class claims.

30. Ms. Baxter has fully cooperated with the administrative process and has exhausted all the administrative process that is available.

## LEGAL BACKGROUND

### Section 501 of the Rehabilitation Act

31. The Rehabilitation Act of 1973 ("Rehabilitation Act") was the first federal civil rights legislation to protect people with disabilities. 29 U.S.C. § 791 *et seq.*; 29 C.F.R. § 1614.203 *et seq.*

---

[2] *See* EEOC Management Directive-110, ch. 8, § III (2015). Additionally, there is no opt-out process once the EEOC has certified a class claim. *Id.* An agency will process an individual claim covered by a previously filed putative class claim only after class certification is denied. *See* 29 C.F.R. § 1614.204(l)(2).

(Section 501 implementing regulations). The Rehabilitation Act served as the model for the Americans with Disabilities Act ("ADA"), which in turn influenced disability civil rights laws in over 180 countries.[3]

32. Section 501 of the Rehabilitation Act ("Section 501") prohibits discrimination on the basis of disability against "qualified individual[s]" employed in the federal sector. 29 U.S.C. § 791(f). A "qualified individual" is "an individual [with a disability] who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m).[4]

33. Section 501's core principle is that the government must take reasonable affirmative steps, more commonly known as reasonable accommodations, to allow people with disabilities equal access to and enjoyment of the benefits and privileges of employment, except where the government can demonstrate that doing so would pose an undue hardship. *See* 29 U.S.C. § 791; 29 C.F.R. § 1614.203(d)(3)(ii). Under Section 501, a federal government agency must offer a reasonable accommodation if the accommodation would allow the employee with a disability to fulfill the essential duties of their job without imposing an undue hardship on their employer. 29 C.F.R. §§ 1614.203(a)(10), 1630.2(o)(4).

34. There is no exhaustive list of reasonable accommodations. Reasonable accommodations "may include . . . making existing facilities used by employees readily accessible to and usable by individuals with disabilities," "job restructuring, part-time or modified work schedules,

---

[3] *See* Joseph Shapiro, *How a Law To Protect Disabled Americans Became Imitated Around the World*, NPR (July 24, 2015), https://perma.cc/Z77Y-8FQ9.

[4] Enforcement of Section 501 is governed by the same standards as Title I of the ADA. 29 U.S.C. § 791(f) ("The standards used to determine whether this section has been violated in a complaint alleging non-affirmative action employment discrimination . . . shall be the standards applied under Title I of the American with Disabilities Act"); 29 C.F.R. § 1614.203 (same); *see also* 42 U.S.C. § 12111 *et seq.* (Title I of the ADA).

reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).

35. An agency-employer must typically undertake an "interactive process" to determine what reasonable accommodation would provide an employee with a disability equal access to and enjoyment of the benefits and privileges of employment. 29 C.F.R. § 1614.203(d)(3)(i). The interactive process is an informal process where the agency and employee exchange information, respond to the other's proposals, and seek agreement on an appropriate accommodation. 29 C.F.R. § 1630.2(o)(iii).

36. An employer violates Section 501 when it fails to "engage in good faith with the interactive process" if "a reasonable accommodation was possible." *Tarquinio v. Johns Hopkins University Applied Physics Lab*, 141 F.4th 568, 574 (4th Cir. 2025). Pursuant to Section 501, an agency may not predetermine that a particular accommodation is not reasonable and must engage in a good-faith interactive process. *See, e.g., Civil Rights Dept. v. Grimmway Enterprises*, 800 F. Supp. 3d 1084, 1114 (E.D. Cal. 2025) ("Barring outright a certain type of reasonable accommodation constitutes a policy or practice of disability discrimination.").

37. Under Section 501, the employee bears the burden of showing that their requested accommodation is reasonable. The agency, in turn, bears the heavy burden of demonstrating that the requested accommodation would cause undue hardship. 42 U.S.C. § 12111(10)(A); 29 C.F.R. § 1630.15(d).[5]

---

[5] *See also Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA*, U.S. Equal Employment Opportunity Commission (Oct. 17, 2002), https://perma.cc/ESH2-ZKQ3.

38. To establish a claim of discrimination under Section 501 for failure to accommodate, a federal employee must demonstrate that (1) they have a disability; (2) their employer had notice of their disability; (3) with reasonable accommodation, they could perform the essential functions of the position; and (4) their employer refused to make such accommodation. *See Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021).

## FACTUAL ALLEGATIONS

### Telework in the Federal Government

39. Telework (also known as remote work or telecommuting) is an arrangement by which an employee "performs the duties and responsibilities" of their position "from an approved worksite other than the location from which the employee would otherwise work."[6]

40. Telework is necessary for many people with disabilities to ensure equal access to the workplace and enjoyment of the benefits and privileges of employment. For example, telework allows employees to manage and reduce the pain and fatigue from disabilities that may arise in the workplace. When individuals work from home, they can use assistive technology that might not be available in the workplace and more easily administer medication and treatment to themselves. Working from home also reduces the exposure of immunocompromised individuals to illness in the workplace. In short, telework gives many employees with disabilities equal access to the workplace, as required by law, by accommodating their disability-related needs.[7]

41. Telework also allows employers to accommodate a wide variety of disabilities, which traditional in-person workplaces are often ill-equipped to do.[8]

---

[6] *What is the definition of telework?*, U.S. Off. of Pers. Mgmt., https://perma.cc/K4CC-FRZB (last accessed March 2, 2026).

[7] Alicia Gonzalez, *How Remote Work Supports Disability Inclusion*, Forbes (July 18, 2024), https://perma.cc/JQR7-KVED.

[8] *Disability-Inclusive Telework for States* at 2, The Council of State Gov'ts (2020), https://perma.cc/SR44-8J9C.

42. Telework has long been recognized as a reasonable accommodation under Section 501. The EEOC, which implements and enforces the Rehabilitation Act, published guidance in 2002 stating that telework can be a reasonable accommodation.[9] Courts have repeatedly recognized the same. *See*, *e.g.*, *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994) ("in appropriate cases, . . . section [501] requires an agency to consider work at home, as well as reassignment in another position, as potential forms of accommodation"); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001) ("Working at home is a reasonable accommodation when the essential functions of the position can be performed at home and a work-at-home arrangement would not cause undue hardship for the employer.").

43. The federal government is well positioned to provide telework reasonable accommodations for employees who require it. Telework became common practice for many employees, not just those with disabilities, during the COVID-19 pandemic. As of June 2024, almost ten percent of the federal workforce (over 200,000 employees, at the time) worked remotely at least some of the time.[10] In FY24, 28% of DOJ's 117,257 employees teleworked.[11] These figures include both individuals teleworking as a reasonable accommodation for disability ("telework accommodations") and individuals teleworking under other policies or agreements.[12]

44. As of the date of this filing, EOIR is actively hiring for full-time remote positions.[13]

---

[9] U.S. Equal Employment Opportunity Commission, *supra* n. 5.

[10] *Federal Remote Work: OPM Guidance Could Help Relevant Agencies Evaluate Effects on Agency Performance*, U.S. Gov't Accountability Off. (Jun. 17, 2025), https://perma.cc/V3YC-TVAJ.

[11] *Telework in the Federal Government Report to Congress: Fiscal Year 2024* at 10, U.S. Off. Of Pers. Mgmt. (Dec. 2025), https://perma.cc/EWN8-7BZR.

[12] Telework agreements, unlike accommodations, are governed by the Telework Enhancement Act and may be revoked at any time by the agency. 5 U.S.C. § 6501 *et seq*.

[13] *Immigration Judge*, USAJobs, https://perma.cc/WX6E-7BCZ (last accessed on May 29, 2026).

**Requesting a Reasonable Accommodation at EOIR**

45. The process by which EOIR employees must request reasonable accommodations is purportedly governed by two written policies: the DOJ Reasonable Accommodation Policy[14] and the DOJ Reasonable Accommodation Process Policy.[15]

46. The DOJ Reasonable Accommodation Policy reiterates the agency's responsibilities under Section 501, stating that "[i]t is the policy of the Department of Justice . . . to provide reasonable job accommodations for employees and job applicants with disabilities . . . using an interactive process that will respond to requests for reasonable accommodation in a flexible, confidential, and objective manner." DOJ, *supra* n.14 at 9. The policy includes examples of reasonable accommodations, including "modifying a work schedule," "providing assistive technology," and "providing telework beyond that provided by the collective bargaining agreement or the relevant memorandum of understanding." *Id.* at 10.

47. The DOJ Reasonable Accommodation Process Policy lays out the processes EOIR (and other DOJ components) must follow in processing reasonable accommodation requests and provides guidance for denial of reasonable accommodation requests.

48. Under the DOJ Reasonable Accommodation Process Policy, EOIR employees can use DOJ Form 100A to request a reasonable accommodation. Form 100A requests several categories of information, including the employee's "disabling condition," the "accommodation requested," and the "reason for request," which prompts the employee to "[e]xplain how the requested accommodation(s) would assist you in performing your essential jobs functions or enable you to

---

[14] Internal Policy Statement, DOJ, Reasonable Accommodation (Sep. 23, 2019), https://perma.cc/QWX4-HH62 ("DOJ Reasonable Accommodation Policy").
[15] Internal Instruction, DOJ, Reasonable Accommodation Process (Sep. 23, 2019), https://perma.cc/B6S4-5Z3Y ("DOJ Reasonable Accommodation Process Policy").

access a benefit or privilege of employment." Employees may also append supporting documentation from medical providers to this form. EOIR employees typically submit Form 100A to EOIR's Office of General Counsel ("OGC").

49. Under DOJ's Reasonable Accommodation Process Policy, a Deciding Official (an agency official responsible for the reasonable accommodation process) must engage in an interactive process with the employee to identify an accommodation that will effectively address the employee's disability-related needs while also allowing the employee to perform the essential functions of the job.

50. If an employee's need for an accommodation, including telework, is clear from their request and supporting medical documentation, an EOIR Deciding Official may approve the accommodation. If further clarification is needed, the Deciding Official and employee meet to discuss how the agency could accommodate the employee's disability.

51. If the agency denies the employee's reasonable accommodation, the Deciding Official "should notify the requestor, in writing, of the specific reason(s) for the denial."[16] When EOIR denies reasonable accommodation requests, it uses DOJ Form 100B. Form 100B instructs the agency to "check all [reasons] that apply" for the denial. Listed reasons include: "accommodation ineffective/inappropriate," "accommodation would cause undue hardship," "employee did not accept an alternative accommodation offered," "medical documentation inadequate," "accommodation would require removal of essential function," and "accommodation would require lowering of performance or production standard." The agency must provide "detailed reason(s) for the denial of [the] reasonable accommodation" and, if an alternative accommodation

---

[16] *See id.* at 28.

was offered and not accepted, "explain how the alternative accommodation addresses the limitation and why you believe the chosen accommodation would be effective."

52. If there is a delay in processing an employee's reasonable accommodation request, "the supervisor must provide a temporary or interim accommodation absent an undue hardship to enable the employee to perform the essential functions of the job."[17] Prior to February 2025, EOIR's typical practice was to permit an employee seeking a reasonable accommodation to continue with the last reasonable accommodation approved (even if the accommodation had expired) until the agency made a decision on the new accommodation request.

### EOIR's No Telework Accommodations Policy and Practice

53. Beginning in February 2025, EOIR departed from the agency's longstanding, written policies with respect to the reasonable accommodation process and provision of telework accommodations. Instead, EOIR adopted the No Telework Accommodations Policy and Practice and stopped engaging in good-faith reasonable accommodation processes when employees requested telework accommodations. Pursuant to the Policy and Practice, EOIR predetermines that such accommodations are unavailable and denies all such requests for telework accommodations, regardless of the merits of those requests.

*Trump Administration expresses disapproval of telework in the federal government*

54. EOIR's adoption of the No Telework Accommodations Policy and Practice closely followed the Trump-Vance Administration's crackdown on teleworking in the federal government. On January 20, 2025, President Trump issued the Return to Work Memorandum, which directed all executive agencies to "take all necessary steps to terminate remote work arrangements and

---

[17] *Id.* at 17.

require employees to return to work in-person . . . provided that the department and agency heads shall make exemptions they deem necessary."[18]

55. Two days later, the Office of Personnel Management ("OPM") issued guidance to all agency heads directing them to revise their agencies' telework policies to state that all eligible employees must work full-time in-person, subject to certain exceptions including disability and qualifying medical conditions. The guidance instructed agency heads to notify all employees of the Return to Work Memorandum and inform them of the agency's intention to fully comply with the Memorandum. OPM and the Office of Management and Budget ("OMB") also issued a memo to all agency heads instructing them to prepare implementation plans by February 7, 2025, to fully comply with the President's Return to Work Memorandum.

56. On February 5, 2025, the day she was sworn in, then-Attorney General Pamela Bondi sent a memo to all DOJ employees directing them to return to full-time in-person work by February 24, 2025.

*EOIR implements the No Telework Accommodations Policy and Practice*

57. EOIR responded to these White House and Department-wide directives by ushering in draconian anti-telework practices that cut off access to telework not only for those with telework agreements but also for employees with disabilities who depend on telework reasonable accommodations to perform the essential functions of their jobs.

58. Prior to spring 2025, many EOIR employees used telework to accommodate their disabilities. Of the more than 100,000 employees at the Department of Justice, approximately 11% of those with full-time telework reasonable accommodations worked at EOIR. Many more EOIR

---

[18] Presidential Memorandum of January 20, 2025, Return to In-Person Work, 90 Fed. Reg. 8251 (Jan. 20, 2025).

employees had not been required to seek telework as a reasonable accommodation because they were permitted to telework under existing agency telework policies.

59.   On February 19, 2025, Acting EOIR Director Sirce Owens emailed all EOIR employees a memo laying out the agency's implementation plan for full compliance with the President's Return to Work Memorandum. The email announced that all existing telework agreements would be terminated on February 21. The memo stated that there would be exceptions to the return to work policy and laid out criteria for determining exceptions based on disability, medical conditions, or other compelling reasons. The memo stated that "employees who have an approved reasonable accommodation (RA) based on a disability. . . or qualifying medical condition may continue to telework or remote work pursuant to an RA agreement . . . only if they cannot perform the work in any office setting with accommodations. EOIR has the ultimate discretion to choose among effective accommodations, and there is no expectation that working from home will be an appropriate reasonable accommodation for most employees."

60. On March 31, 2025, EOIR issued another memorandum, almost identical to its February 19 memo, reiterating the requirement that employees return to work in-person.

61. Throughout the week of April 21, 2025, EOIR replaced almost all the staff responsible for processing reasonable accommodation requests with a single Deciding Official, Nathan Henriksen, for the entire agency. Henriksen, an Acting Deputy General Counsel in EOIR's OGC, had never before served as a Deciding Official.

62. On April 29, 2025, Acting EOIR Director Owens sent another all-staff email regarding telework. Owens singled out telework reasonable accommodations and made clear that the agency would be cracking down on telework accommodation requests. Owens wrote that:

> [I]t is a fundamental ethical principle that "[e]mployees shall put forth honest effort in the performance of their duties." 5 C.F.R. 2635.101(b)(5). Moreover, all

15

employees are required to help root out fraud, waste, and abuse. EOIR must have confidence in the integrity of its workforce and must ensure that its employees are adhering to all Department policies, including the February 2025 telework policy. Currently, although EOIR has only slightly more than 2% of all DOJ employees, it is responsible for approximately 11% of all full-time telework reasonable accommodations (RAs) granted Department-wide. There is no obvious explanation for that disparity, and EOIR will be taking a closer look at RA requests seeking full-time telework to ensure they conform to the applicable law and Department policy.

63. This "closer look" at telework reasonable accommodations is, in actuality, a policy and practice of predetermining that such accommodations are never appropriate and refusing to engage in a good-faith reasonable accommodation process when such accommodations are requested.

64. Since late April 2025, on information and belief, the agency has granted no telework reasonable accommodations to EOIR employees, including new requests for telework reasonable accommodations and requests to renew previously approved telework reasonable accommodations.

65. Instead, pursuant to the No Telework Accommodations Policy and Practice, EOIR predetermines that telework is not a reasonable accommodation. When telework accommodations are requested, EOIR refuses to engage in a good-faith process based on employees' need for telework to perform the essential functions of their job, the extent of their supporting medical documentation, the employees' record of past performance with that reasonable accommodation, or the inefficacy of alternative in-office accommodations. Nor does EOIR claim that allowing qualified employees with disabilities to telework would pose an undue hardship to the agency. Instead, the agency proffers pretextual reasons to deny telework pursuant to the Policy and Practice.

66. While EOIR's No Telework Accommodations Policy and Practice has not been publicly promulgated, its existence is evident from (1) admissions made by high-ranking EOIR officials and (2) the consistent experience of Plaintiffs and other class members.

16

*High-ranking EOIR officials concede that the agency has adopted the No Telework Accommodations Policy and Practice*

67. On multiple occasions, during meetings with employees requesting telework accommodations, EOIR's Deciding Official, Nathan Henriksen, has explicitly acknowledged that no telework accommodations will be granted because of EOIR's policy to deny such requests.

68. Henriksen has advised employees that during the current Trump-Vance Administration, the agency has not granted any requests for telework reasonable accommodations.

69. Henriksen has conceded to EOIR employees that, in relation to telework accommodations, "we were doing that before but now we're not."

70. At least one former EOIR deciding official was instructed not to grant telework as a reasonable accommodation. On information and belief, this official was removed from their position because EOIR leadership was concerned that they would not comply with the No Telework Accommodations Policy and Practice.

*Pursuant to the No Telework Accommodations Policy and Practice, EOIR has refused to engage in a good-faith accommodations process, instead predetermining that telework should be denied*

71. The No Telework Accommodations Policy and Practice appears to have been implemented uniformly. Since its adoption, EOIR employees who have requested telework reasonable accommodations (whether new requests or renewals of previously approved telework reasonable accommodations) have all had their accommodation requests denied.

72. Reasonable accommodation meetings where such accommodations are requested no longer reflect a good-faith interactive process.

73. Prior to EOIR's adoption of the No Telework Accommodations Policy and Practice, meetings between EOIR's Deciding Official and employees requesting reasonable accommodations provided a forum for the agency to gather more information about the employee's

17

request so that EOIR could determine what accommodation would address the employee's disability-related needs while allowing them to perform the essential functions of their job.

74. Following the adoption of the Policy and Practice, Mr. Henriksen refuses to consider employees' explanations for why telework is the only accommodation that would allow them to perform the essential functions of their job.

75. Even where employees offer explanations and medical documentation supporting their requests for telework reasonable accommodations, EOIR only offers ineffective, non-telework alternatives.

76.  In all cases, Mr. Henriksen has denied each employee's telework accommodation during or within a few days of the meeting, providing pretextual reasons for the denial that do not engage with or address the employee's need for a telework reasonable accommodation.

77. While the agency's pretextual reasons for denying telework may differ between employees, the common thread in every case is that EOIR has predetermined the denial of telework as a reasonable accommodation.

78. For example, in its denials of both Ms. Panian's and Ms. Baxter's full-time telework accommodation requests (in May 2025 and January 2026, respectively), EOIR claimed that they had each refused the alternative accommodations it proposed. In fact, EOIR refused to engage with Ms. Panian's and Ms. Baxter's explanations as to why those non-telework accommodations would be ineffective.

79. In Ms. Panian's case, EOIR offered her a modified work schedule and the ability to take breaks, have food and medication nearby, and use a chair or stool. None of these "alternatives" addressed the reasons Ms. Panian needed fulltime telework: the risks of experiencing an equipment malfunction or medical emergency in a workplace not equipped to rapidly respond. Even though

18

Ms. Panian explained this in her meeting with Mr. Henriksen (and provided medical documentation in support), EOIR denied her request without responding to the reasons she provided for why the alternatives would not work.

80. In Ms. Baxter's case, Mr. Henriksen offered a private office as an alternative accommodation but failed to respond when she explained (and provided supporting medical documentation) that because she is seriously immunocompromised from cancer treatment, a private office would not address the forced contact with other employees and individuals attending immigration court and the heightened risk of exposure to pathogens in shared spaces like the lobby, elevator, and bathroom.

81. Numerous other Class Members – including Immigration Judges, attorney-advisors, and others – have likewise been subjected to the No Telework Accommodations Policy and Practice.

82. While their specific disabilities may differ, all experienced EOIR's sham process, where the results – no telework accommodations – were predetermined.

83. In so doing, EOIR proposed accommodations untethered from conditions at issue. For example, for Class Members whose disabilities made being in-office hazardous, EOIR offered accommodations that failed to address the in-office risks, such as attending meetings virtually when already present in the office, an office near a bathroom, or a compressed work schedule. EOIR refused to respond to employees' concerns that the alternative accommodations offered were glaringly ineffective and provided no explanations as to why it believed the proffered alternatives were effective.

84. Other Class Members whose medical conditions required them to recline while working were offered only office equipment that exacerbated (not relieved) their conditions. Others with chronic medical conditions requested as-needed telework reasonable accommodations for days

19

where they had flare-ups but were denied on the unexplained ground that their requests were somehow not suited for a reasonable accommodation. Still other employees were denied telework accommodations on the false grounds that they had failed to provide adequate medical documentation.

85. These employees' experiences only scratch the surface of those negatively impacted by EOIR's No Telework Accommodations Policy and Practice. Many Class Members have been forced to use or exhaust their sick and annual leave since EOIR denied their telework accommodations, some have been marked Absent Without Leave ("AWOL") for which they could be disciplined, and others have been forced to put their health and lives at risk by going into the office.

86. The Rehabilitation Act requires more from federal agencies. Agencies may not predetermine that particular accommodations are out of bounds. And where necessary, agencies must undertake a good-faith interactive process, not a sham process that predetermines no employee will get a telework reasonable accommodation as is dictated by EOIR's No Telework Accommodations Policy and Practice.

**EOIR Discriminated Against Plaintiffs Kimberly Panian and Hoi Yee Baxter by Denying Their Telework Reasonable Accommodation Requests**

*Plaintiff Kimberly Panian*

87. Plaintiff Kimberly Panian is a thirty-two-year-old Attorney-Advisor at the Otay Mesa Immigration Court in San Diego, California. As an Attorney-Advisor, Ms. Panian conducts legal research, provides summaries of case law, reviews evidentiary records, drafts proposed orders and opinions, and advises Immigration Judges on complex legal issues.

88. Since she was a child, Ms. Panian has experienced migraines with aura, which can cause aphasia[19] and disorientation. Her migraines have worsened over time and can be so serious that they often cause symptoms comparable to a stroke, including excruciating pain, confusion, and difficulty speaking.

89. In April 2018, two weeks before her graduation from law school, Ms. Panian was diagnosed with Type I diabetes after being hospitalized for severe Diabetic Ketoacidosis ("DKA"). DKA is a life-threatening complication of diabetes that occurs when the body lacks enough insulin to use blood sugar for energy. Her diabetes is brittle/labile, a rare form of Type I diabetes that causes severe and rapid swings between hyper- and hypoglycemia. Ms. Panian must always carry medical equipment with her to manage her diabetes symptoms and requires a refrigerator to store her medication.

90. When Ms. Panian experiences a migraine, she is unable to manage her blood sugar, which puts her at considerable risk of going into hypoglycemia (which can lead to seizures or death) or DKA. A failure of medical personnel to quickly reach her and administer care during one of those emergencies could have life-threatening consequences.

91. Ms. Panian has always had a passion for public service, with a specific interest in immigration law and its profound impact on people's daily lives. She received her law degree from the University of Pennsylvania. Ms. Panian wanted to work at EOIR after law school because she viewed a job at the agency as an opportunity to pursue meaningful immigration work.

---

[19] Aphasia is a communication disorder, often characterized by speaking in short or incomplete sentences, having difficulty finding words, and speaking in words and sentences that don't make sense. *Aphasia*, Mayo Clinic (June 11, 2022), https://perma.cc/C3MT-XS4P.

21

92. In September 2018, Ms. Panian began work as a GS-11 Judicial Law Clerk at EOIR through the Attorney General's Honors Program, a highly competitive program for recent law school graduates committed to a career in public service.

93. In October 2019, Ms. Panian began a permanent position as an Attorney-Advisor for EOIR at the Otay Mesa Immigration Court. As an Attorney-Advisor, Ms. Panian provides support to Immigration Judges by conducting legal research, drafting orders, preparing decisions, and reviewing evidentiary records.

94. In March 2020, at the onset of the COVID-19 pandemic, Ms. Panian requested a full-time telework accommodation due to concerns that her diabetes made her vulnerable to serious health complications. EOIR granted her reasonable accommodation request. Shortly thereafter, EOIR instructed all staff to begin teleworking under telework agreements.

95. On August 25, 2022, Ms. Panian applied for a renewed reasonable accommodation of full-time telework.

96. In her DOJ Form 100A, she disclosed her medical conditions and symptoms. She explained that the migraines cause severe pain and impair her vision, coordination, and speech. Ms. Panian also noted that when she has a migraine episode, she cannot manage her blood sugar, which puts her at considerable risk due to her diabetes. Her request explained that she is better able to manage her symptoms from home and emphasized the danger of having a medical emergency at work due to the court's lack of cell service and trained individuals to help her. She also submitted a supporting letter from her endocrinologist.

97. About a week later, one of EOIR's then-Deciding Officials, Thalita Silva, requested more information from Ms. Panian to determine what reasonable accommodation would be most appropriate. Ms. Panian responded with additional supporting letters from her physician stating

that she needed to work from home because of her migraine symptoms and the effect they have on her ability to administer her diabetes medication.

98. On November 14, 2022, Ms. Silva granted Ms. Panian full-time telework as a reasonable accommodation through May 10, 2023. In the letter, Ms. Silva acknowledged EOIR's responsibility under the Rehabilitation Act to provide reasonable accommodations to qualified individuals with disabilities. The letter went on to determine that Ms. Panian is a qualified individual with a disability for whom full-time telework is an appropriate reasonable accommodation. The letter informed Ms. Panian that she must submit an updated request with new medical documentation before April 26, 2023, to renew her accommodation.

99. EOIR repeatedly renewed Ms. Panian's telework reasonable accommodation until it implemented the No Telework Accommodations Policy and Practice.[20]

100. Ms. Panian, for years, consistently earned top performance reviews while teleworking.

101. Pursuant to then-Acting Director Owen's February 19 email implementing President Trump's Return to Work Memorandum and canceling all telework agreements, EOIR canceled Ms. Panian's telework agreement as of February 21, 2025.

102. On February 21, 2025, Ms. Panian submitted DOJ Form 100A to OGC to request a reasonable accommodation of full-time telework. Her reasonable accommodation request provided detailed information about why telework was a necessary accommodation and explained why working from the office could pose life-threatening risks to her. Under "disabling condition," she again disclosed her diabetes, severe migraines, and inability to monitor blood sugar during migraine attacks. As her "reason for request," Ms. Panian explained that she is "able to access

---

[20] Ms. Panian consistently and successfully teleworked, either pursuant to a telework reasonable accommodation or a telework agreement, from March 2020 to February 21, 2025.

23

[her] myriad of medications and medical equipment at home," that she can address hypo- and hyperglycemia events much more easily and effectively at home, and that her diabetes and migraine medication need to be administered rapidly (something she cannot do when she is having a severe low blood sugar event or having a migraine). She also noted the court's remote location, the long time it takes to get in and out of the facility, its poor cell service, and her susceptibility to illness at the court due to her autoimmune condition (Type I diabetes).

103. On February 24, 2025, while her request for a reasonable accommodation was pending, Ms. Panian separately signed a two-year full-time telework agreement with her supervisor. Her supervisor explained that this agreement was for those employees who had previously been granted telework reasonable accommodations.

104. On April 2, 2025, EOIR requested additional medical documentation from Ms. Panian regarding her reasonable accommodation request.

105. On April 25, 2025, Ms. Panian submitted additional medical documentation from her medical provider reiterating her chronic and permanent medical conditions and need to work remotely. This documentation explained that telework was a necessary accommodation for Ms. Panian because working from the office could pose life-threatening risks to her. This documentation was of a similar nature to the medical documentation Ms. Panian had provided several times in the past that explained why she requires remote work.

106. On April 29, 2025, Ms. Panian sent a message to OGC raising the issue of undue delay regarding her reasonable accommodation request. OGC responded that "[o]ur delay in responding to your request for reasonable accommodation is because our office experienced major staffing changes."

24

107. On May 7, 2025, Ms. Panian met with Mr. Henriksen and Acting Senior Associate General Counsel Patricia Allen, who provided administrative support during the meeting, to discuss her reasonable accommodation request. Mr. Henriksen began the discussion by stating he was "assuming we aren't going to approve telework . . ." Ms. Panian explained how telework helps her do her job, including because when her blood sugar plummets, a potentially life-threatening condition, her medication must be administered by a trained individual within a few minutes (which she cannot do by herself during a migraine episode). When she is at home, she has family at and near her home who have helped her through medical emergencies in the past and know how to administer her medication. She explained the risks of equipment malfunctioning at the office or having an emergency at the immigration court, where there is limited cell service and it can take dangerously long in an emergency to get in and out of the building.

108. Despite Ms. Panian's explanation of why potential accommodations at the office were not effective due to the life-threatening nature of her disabilities, Mr. Henriksen characterized her request for telework as a "preference" and rooted in "convenience." Though she explained many times how no in-office accommodation would be effective, Mr. Henriksen pressured Ms. Panian to accept alternative in-office accommodations such as bathroom breaks, "keep[ing] diabetes supplies and food nearby," "us[ing] a chair or stool," and "work[ing] a modified work schedule." These alternatives did not address the reasons why Ms. Panian requires telework as a reasonable accommodation.

109. Mr. Henriksen also requested that Ms. Panian provide additional documentation from her medical provider explaining in detail why she needs full-time telework, despite Ms. Panian's prior submission of full medical documentation.

110. Mr. Henriksen and Ms. Allen repeatedly urged Ms. Panian to withdraw her telework reasonable accommodation request, warning her that if she did not withdraw it, her existing telework agreement with her supervisor would be jeopardized.

111. During this meeting, Mr. Henriksen admitted that EOIR had changed its position on telework and that it had not granted any requests for telework accommodations under the new administration. When Ms. Panian asked Mr. Henriksen what undue burden telework would pose to the agency, he provided no answer. Instead, Mr. Henriksen verbally denied her telework reasonable accommodation request. Mr. Henriksen informed her that she could appeal the denial of her telework accommodation and submit more medical documentation for a first-level reconsideration, which would also be reviewed by him. He noted, however, that her accommodation request could be denied on every level of reconsideration.

112. Later that day after the meeting concluded, Mr. Henriksen issued a formal written denial of Ms. Panian's request for telework as a reasonable accommodation. In the Form 100B, Mr. Henriksen checked off three reasons for the denial: "accommodation ineffective/inappropriate," "employee did not accept an alternative accommodation offered," and "medical documentation inadequate." The denial stated that Ms. Panian "did not provide sufficient medical documentation" in response to OGC's April 2 request for further medical documentation, though on April 25, Ms. Panian had provided additional correspondence from her doctor reiterating her medical conditions and symptoms and explaining why remote work was necessary to accommodate these conditions. The denial did not state what alternative accommodations Mr. Henriksen and Ms. Panian discussed at their meeting.

113. Mr. Henriksen also provided no support on Form 100B for his assertion that the telework accommodation was ineffective or inappropriate. Mr. Henriksen provided no evidence that Ms.

26

Panian was unable to perform the essential functions of her job while teleworking or that telework caused undue hardship for EOIR.

114. Mr. Henriksen failed to adequately explain how the alternative accommodations he offered at the meeting would address Ms. Panian's needs. If an individual does not accept an alternative accommodation, Form 100B prompts the evaluator to "explain how the alternative accommodation addresses the limitation and why you believe the chosen accommodation would be effective." Mr. Henriksen provided no such explanation and instead stated that "[t]he employee declined any discussion of in-office accommodation." He failed to mention his and Ms. Panian's lengthy discussion of in-office accommodations, in which she explained the many reasons why bathroom breaks, having food and medication nearby, using a chair, and working a modified work schedule would not be effective.

115. Ms. Panian also provided EOIR with extensive medical documentation. Similar documentation had always been enough to demonstrate that Ms. Panian requires full-time telework due to her disabilities.

116. On May 20, 2025, Ms. Panian requested reconsideration of her reasonable accommodation denial.

117. On May 22, 2025, as part of the reconsideration process, Ms. Panian submitted copies of her previous telework reasonable accommodations, letters from her endocrinologist, neurologist, and primary care physician, evidence that the sally port (i.e., the secured entry and exit gates at the detention center) had a history of malfunctioning (which locks her in the building and prevents anyone from the outside from reaching her), and evidence of a recent COVID-19 outbreak at the detention center.

27

118. On June 9, 2025, Mr. Henriksen denied Ms. Panian's request for reconsideration of his denial of her telework reasonable accommodation request. The email stated "[a]s part of the interactive process, you declined any discussion of alternative, in-office accommodations which may be effective and reasonable."

119. The stated reasons for denying the reconsideration of Ms. Panian's reasonable accommodation request mischaracterized the nature of her medical conditions, ignored the substantial medical documentation she had presented in support of her request, and were pretextual. In fact, EOIR denied her request based on its No Telework Accommodations Policy and Practice.

120. On June 9, 2025, Ms. Panian requested second-level reconsideration of her first-level reconsideration denial.

121. On June 18, 2025, EOIR denied Ms. Panian's second-level request for reconsideration of its denial of her telework reasonable accommodation request. Greg Radics, from EOIR's OGC, denied reconsideration, incorrectly stating that alternative accommodations had been discussed and denied.

122. On April 6, 2026, EOIR revoked the telework agreement that had been entered into on February 24, 2025, and ordered Ms. Panian to return to work in-person on April 20 or face disciplinary consequences including being marked AWOL and removal from federal office.

123. Since April 20, 2026, Ms. Panian has used sick and annual leave to avoid risking her health. At the time of this complaint, she has exhausted almost 250 hours of sick leave and annual leave and will be out of available leave by the middle of June 2026.

124. Ms. Panian has experienced worsening physical and mental health symptoms because of EOIR's denial of her telework reasonable accommodation request and its order that she return to

28

work in-person. In addition to skyrocketing blood sugar and increased migraines, Ms. Panian has been in a constant state of increased anxiety and has experienced numerous panic attacks and other mental health symptoms. Given her precarious health, the stress and anxiety create a domino effect that worsens her ability to manage her diabetes, migraines, and related symptoms. The medication and medical equipment on which Ms. Panian relies are incredibly expensive, and she lives in constant fear that she will have to jeopardize her life by returning to in-person work to protect her livelihood and health insurance.

*Plaintiff Hoi Yee Baxter*

125. Plaintiff Hoi Yee Baxter is a forty-four-year-old Attorney-Advisor with EOIR's Office of Policy ("OP"), where she works in the Legal Education and Research Services Division ("LERS"). As an Attorney-Advisor, Ms. Baxter prepares and designs programs, services, and technology to enhance the agency's mission and train immigration attorneys and judges.

126. Ms. Baxter is a qualified individual with a disability. Specifically, she has Stage IV lung cancer, which was diagnosed in September 2024. Due to ongoing cancer treatments, she has a severely compromised immune system and experiences fatigue, nausea, constipation, diarrhea, severe heartburn, and high heart rates, which require frequent and routine monitoring.

127. Ms. Baxter has always been passionate about education and the law. She has a Master's degree in Education from Western Carolina University and a law degree from North Carolina Central University School of Law.

128. In September 2018, Ms. Baxter began work as a GS-11 Judicial Law Clerk in the San Antonio Immigration Court through the Attorney General's Honors Program, a highly competitive program for recent law school graduates committed to a career in public service.

129. Beginning in September 2020, despite having several offers for permanent positions elsewhere, Ms. Baxter elected to take a temporary job at OP, where she rotated between LERS and

29

the Immigration Law Division ("ILD"). Her background in education fueled her desire to help train EOIR employees to do their jobs to the full extent of the agency's mission.

130. In February 2022, she accepted a permanent position with LERS and was subsequently promoted to the GS-15 level.

131. While Ms. Baxter's duty station is San Antonio, Texas, as an employee of OP, she is assigned to EOIR's headquarters in Falls Church, Virginia. Her supervisor is assigned to and physically located in EOIR's headquarters in Falls Church, Virginia. She is the only OP employee located in San Antonio who is assigned to EOIR headquarters. The rest of the EOIR employees in San Antonio are assigned to the OCIJ.

132. While still assigned to OCIJ, Ms. Baxter's supervisor approved her to telework two days per pay period. In March 2020, due to the COVID-19 pandemic, she transitioned to full-time telework.

133. Ms. Baxter was diagnosed with Stage IV lung cancer in September 2024.

134. In December 2024, Ms. Baxter requested a reasonable accommodation of full-time telework due to her stage IV lung cancer. She also submitted a supporting letter from her oncologist attesting to her Stage IV lung cancer diagnosis, treatment, and symptoms from the treatment and stating that a full-time telework accommodation would allow her to continue work without risking her health.

135. On January 13, 2025, Cortney Cortez, an EOIR Deciding Official, granted Ms. Baxter's reasonable accommodation request. In the letter approving her for full-time telework, Ms. Cortez stated that she found that Ms. Baxter was a "qualified individual with a disability" under Section 501 of the Rehabilitation Act. The letter stated that "[t]he purpose of accommodations is to remove workplace barriers and to assist qualified individuals with a disability to perform the essential

functions of their position. Accordingly, [EOIR] finds it appropriate to grant . . . telework . . . on a full-time basis" through December 31, 2025.

136. In Ms. Baxter's annual performance review, dated December 3, 2025, encompassing her first eight months of telework under the reasonable accommodation, her supervisor wrote that "Ms. Baxter consistently performed at a highly successful level in her role as an Attorney Advisor on the Immigration Law and Adjudications Training team. Ms. Baxter's work on the team was integral to the team's success during the rating period given her role as a senior attorney and due to her institutional knowledge of … LERS, the Office of Policy, and the agency as a whole."

137. On December 23, 2025, Ms. Baxter submitted a request to renew her full-time telework reasonable accommodation. In support, she submitted correspondence from her oncologist, who attested to Ms. Baxter's ongoing diagnosis and symptoms and stated that he believed remote work "would help ensure that she can [do] her job safely and effectively without undue burden to [EOIR]."

138. On January 5, 2026, Ms. Baxter filed an updated DOJ Form 100A reiterating her December 23 request.

139. On January 9, 2026, Ms. Baxter contacted EOIR's Reasonable Accommodation Office to request an interim accommodation of full-time telework while it adjudicated her pending request. EOIR denied the request on January 12, 2026, stating that "[a]t this time, there is no interim accommodation."

140. On January 21, 2026, Ms. Baxter met with Mr. Henriksen and Alex Spindler, then-Acting Reasonable Accommodation Coordinator and Fraud Counsel, regarding her reasonable accommodation request. Mr. Henriksen consistently attempted to refute Ms. Baxter's explanation for why the alternative accommodations he offered (a private office and an air-purifier) would not

be effective since she would still be exposed to germs in shared spaces like the restroom, elevators, and lobby. She explained that for her, getting a cold or the flu could land her in the emergency room, and thus, no in-office accommodations would be effective. Ms. Baxter also provided Mr. Henriksen with detailed examples of the symptoms she experiences due to cancer treatment, including risk of blood clots and fatigue, and explained how telework would help her address those symptoms (by being able to move around during the day without coming into contact with others and lie down to rest as needed).

141. EOIR transmitted a denial of Ms. Baxter's telework reasonable accommodation request the next day although Mr. Henriksen signed it the same day as the meeting he had with her. In the Form 100B, Mr. Henriksen checked off two reasons for the denial: "accommodation ineffective/inappropriate" and "employee did not accept an alternative accommodation offered." Under reason for denial, he stated that Ms. Baxter "was not interested" in discussing in-office accommodations, that she was concerned with exposure to illnesses from office staff, and that neither Ms. Baxter nor her medical documentation specified any workplace barrier resulting from any disability.

142. The Form 100B did not indicate why EOIR could not accommodate Ms. Baxter's request for full-time telework. EOIR did not explain what hardship would be imposed upon the agency due to Ms. Baxter's telework nor did it state that Ms. Baxter could not perform the essential functions of her job from home.

143. Ms. Baxter's reasonable accommodation request provided detailed information about why telework was a necessary accommodation and explained why working from the office could pose life-threatening risks. Ms. Baxter explained in her meeting with Mr. Henriksen that her immune system was compromised from cancer treatment and that moving through shared spaces

32

like the lobby, elevator, and restrooms could be life-threatening. EOIR ignored this obvious defect in its proposed in-office accommodation and denied Ms. Baxter's request for a telework accommodation on the ground that she declined to discuss alternative accommodations.

144. On January 27, 2026, Ms. Baxter received a notice from EOIR directing her to return to in-office work by February 2, 2026.

145. On February 1, 2026, Ms. Baxter submitted a letter to Mr. Henriksen and her supervisor requesting that EOIR rescind its January 27 notice requiring her to return to in-office work and grant her an interim accommodation of telework until a decision on her request for reconsideration could be adjudicated. On February 6, 2026, OGC denied that request, stating that "[t]he 100B determination form stands. No further interim accommodations are available at this time."

146. On February 3, 2026, Ms. Baxter began to use leave to avoid coming into the office and risking her health.

147. On February 9, 2026, Ms. Baxter requested a reconsideration of her denial in which she explained why EOIR's proposed alternative accommodations would not be effective. Among other reasons, Ms. Baxter explained that in addition to the other EOIR staff who would be present, the building where her office would be located is accessed by detainees' families, attorneys, and other individuals attending court proceedings and that it is not uncommon for immigration detention facilities to have communicable disease outbreaks. She also pointed out that although EOIR is insisting that she return to in-person work in the San Antonio Immigration Court, all the other employees on her team work from Falls Church, Virginia.

148. On February 20, 2026, Mr. Henriksen denied Ms. Baxter's request for reconsideration of its denial of her reasonable accommodation request.

33

149. On February 27, 2026, Ms. Baxter submitted a second-level request for reconsideration in which she explained that EOIR's proposed alternative accommodations are not effective because they do not sufficiently address her heightened risk of infection through exposure to other individuals and communicable diseases in the workplace. On March 20, 2026, EOIR sent Ms. Baxter a letter noting that she had been on leave since February 2, 2026, and instructing her to return to work at the San Antonio Immigration Court by March 27, 2026. EOIR also ordered her to provide "administratively acceptable medical documentation to support . . . requests for sick leave from February 3, 2026, to the present" and instructed her on the steps she needed to use to seek approval for leave moving forward.

150. In response, Ms. Baxter submitted a letter from her physician reiterating that she is immune-susceptible because of the distress that chemotherapy, radiation, and her lobectomy have imposed on her body and that she should telework full time so that she can work effectively without jeopardizing her health. Her physician recommended that she take leave in the absence of full-time telework.

151. On March 30, 2026, Ms. Baxter received EOIR's denial of her second-level request for reconsideration. Although EOIR stated that it did not dispute that she has a qualifying disability for which it previously granted telework as a reasonable accommodation, its stated reasons for denying Ms. Baxter's reasonable accommodation request blatantly mischaracterized the nature of her medical conditions, ignored the substantial medical documentation she had presented in support of her request, and were pretextual.

152. On April 17, 2026, Ms. Baxter submitted a new request for telework as a reasonable accommodation.

34

153. To avoid risking her health, Ms. Baxter has continued to use sick leave and annual leave since her denial and EOIR's mandate she return to in-person work by February 2, 2026. At the time of this complaint, she has exhausted over 600 hours of sick leave and annual leave and will exhaust her remaining available leave in June 2026.

154. Ms. Baxter worries that she will not have any leave left if she experiences a medical emergency. Working from the office could significantly reduce the length of Ms. Baxter's life because of the risk of infection. She cannot risk being marked AWOL or losing her job, however, since she (and her husband and two children) depend on her health insurance.

155. Since February 3, 2026, when Ms. Baxter received notice from EOIR that she could no longer telework, she has spent the time she would be working thinking about her lung cancer, stressing about losing her job, and contemplating death. EOIR's denial of her telework reasonable accommodation request has had a compounding and negative impact on her mental health. She experiences increased headaches, stress, and anxiety.

156. Ms. Baxter loves her job. She has always been passionate about education and public service and desperately wants to continue working.

## CLASS ACTION ALLEGATIONS

157. Plaintiffs bring this action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure ("FRCP") on behalf of themselves and the following defined Class:

> All EOIR employees with disabilities who, from January 20, 2025, until the resolution of this complaint, requested and were denied telework as a reasonable accommodation for their disability.

158. Numerosity: The Proposed Class is so numerous that joinder of all members is impracticable. EOIR has thousands of employees, many of whom have worked under telework accommodations in the recent past. As recently as April 2025, eleven percent of DOJ employees

with telework reasonable accommodations worked in EOIR. Since early 2025, however, upon information and belief, EOIR has granted no telework reasonable accommodations. Plaintiffs thus believe, and on that basis allege, that during the relevant period, there are hundreds of employees who satisfy the definition of the Proposed Class. Moreover, Plaintiffs anticipate that the class will grow over time because EOIR will continue to maintain the challenged policy and practice of denying telework as a reasonable accommodation to employees with disabilities.

159. Commonality: Common questions of law and fact exist as to all members of the Proposed Class, including but not limited to:

a. Whether EOIR has a pattern, practice, and/or policy of denying telework reasonable accommodations to employees with disabilities regardless of the merits of the request;

b. Whether EOIR's pattern, policy, and/or practice violates Section 501 of the Rehabilitation Act;

c. The appropriate injunctive relief to provide to Plaintiffs and those similarly situated; and

d. The appropriate declaratory relief.

160. Typicality: Plaintiffs' claims are typical of the claims of members of the Proposed Class. Plaintiffs are EOIR employees with disabilities who were denied telework reasonable accommodations due to EOIR's unlawful No Telework Accommodations Policy and Practice.

161. Adequacy: Plaintiffs will fairly and adequately protect the interests of the proposed Class, have no conflicts with the proposed Class's interests, and have retained counsel experienced in class litigation, including class disability discrimination litigation against federal agencies.

162. This case is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because EOIR has acted or refused to act on grounds that apply generally to the proposed Class, including by maintaining a pattern, practice, and/or policy of denying reasonable accommodations

36

of telework to employees with disabilities regardless of the merits of the request and because preliminary and final injunctive relief or corresponding declaratory relief are appropriate respecting the proposed Class as a whole.

## CLAIMS FOR RELIEF

## COUNT I
**Violation of Section 501 of the Rehabilitation Act – EOIR's No Telework Accommodations Policy and Practice**
**(On Behalf of the Proposed Class)**

163. Plaintiffs restate and reallege all paragraphs above as if fully set forth here.

164. EOIR and DOJ are federal agencies within the executive branch of the United States government. Accordingly, EOIR and DOJ are subject to Section 501 of the Rehabilitation Act.

165. Section 501 of the Rehabilitation Act prohibits the federal government from discriminating against qualified federal sector employees with disabilities in job application procedures, hiring, firing, advancement, compensation, job training, and other terms, conditions, and privileges of employment.

166. In addition to these prohibitions, the federal government must take affirmative steps to accommodate federal workers with disabilities. Failure to provide a reasonable accommodation for a qualified employee with a disability constitutes discrimination unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1614.203(b) (noting that "[t]he standards used to determine whether Section 501 has been violated in a complaint alleging employment discrimination under this part shall be the standards applied under the ADA"); 29 C.F.R. § 1630.9(a).

167. EOIR's No Telework Accommodations Policy and Practice violates Section 501 of the Rehabilitation Act by predetermining that telework is not available as a reasonable

37

accommodation, regardless of the employee's need for the accommodation, medical documentation, past performance with that accommodation, or explanation of why alternative in-office accommodations are not effective. *See Civil Rights Dept.*, 800 F. Supp. 3d at 1114 ("Barring outright a certain type of reasonable accommodation constitutes a policy or practice of disability discrimination."); *United States v. City and Cnty. of Denver*, 943 F. Supp. 1304, 1312-13 (D. Colo. 1996), *aff'd sub nom. Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999) (same).

168. EOIR's No Telework Accommodations Policy and Practice violates Section 501's requirement that employers engage in good faith interactive processes to determine whether an employee with a disability is entitled to a reasonable accommodation.

169. Each of the class members has been and continues to be harmed by EOIR's discriminatory No Telework Accommodations Policy and Practice.

170. Class members do not have an adequate remedy at law to redress the violations alleged herein and therefore seek injunctive relief restraining EOIR from continuing to engage in the unlawful policy and practice alleged herein.

**COUNT II**
**Violation of Section 501 of the Rehabilitation Act – EOIR's Failure to Accommodate Plaintiff Kimberly Panian**

171. Plaintiff Kimberly Panian restates and realleges paragraphs 1 through 170 as if fully set forth here.

172. EOIR and DOJ are federal agencies within the executive branch of the United States government. Accordingly, EOIR and DOJ are subject to Section 501 of the Rehabilitation Act.

173. Section 501 of the Rehabilitation Act prohibits the federal government from discriminating against qualified federal sector employees with disabilities in job application procedures, hiring, firing, advancement, compensation, job training, and other terms, conditions, and privileges of employment.

38

174. In addition to these prohibitions, the federal government must take affirmative steps to accommodate federal workers with disabilities. Failure to provide a reasonable accommodation for a qualified employee with a disability constitutes discrimination unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1614.203(b) (noting that "[t]he standards used to determine whether Section 501 has been violated in a complaint alleging employment discrimination under this part shall be the standards applied under the ADA"); *id.* § 1630.9(a).

175. Plaintiff Kimberly Panian is a qualified individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(20); *see also* 42 U.S.C. § 12102. The Rehabilitation Act defines a person with a disability as any person who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment.

176. EOIR was on notice of Ms. Panian's disabilities based on the reasonable accommodation requests she submitted since March 2020 through her most recent submission of DOJ Form 100A on February 21, 2025.

177. Ms. Panian can perform the essential functions of her job with the reasonable accommodation of teleworking.

178. Ms. Panian demonstrated that the in-office alternative accommodations EOIR suggested would be ineffective.

179. EOIR ended the interactive process with Ms. Panian before determining an adequate reasonable accommodation.

180. EOIR failed to demonstrate that granting telework as a reasonable accommodation would constitute an undue burden for the agency.

39

181. Ms. Panian does not have an adequate remedy at law to redress the violations alleged herein and therefore seeks injunctive relief restraining EOIR from continuing to engage in the unlawful policy and practice alleged herein. Ms. Panian also seeks all other forms of relief available as a result of EOIR's ongoing and continuing discrimination including, without limitation, a sufficient reasonable accommodation, reinstatement of leave, correction of records, nonpecuniary compensatory damages, pecuniary damages, back and front pay, equitable relief, interest, attorneys' fees and costs, and any other relief available under the law to make herself whole.

**COUNT III**
**Violation of Section 501 of the Rehabilitation Act – EOIR's Failure to Accommodate**
**Plaintiff Hoi Yee Baxter**

182. Plaintiff Hoi Yee Baxter restates and realleges paragraphs 1 through 181 as if fully set forth here.

183. EOIR and DOJ are federal agencies within the executive branch of the United States government. Accordingly, EOIR and DOJ are subject to Section 501 of the Rehabilitation Act.

184. Section 501 of the Rehabilitation Act prohibits the federal government from discriminating against qualified federal sector employees with disabilities in job application procedures, hiring, firing, advancement, compensation, job training, and other terms, conditions, and privileges of employment.

185. In addition to these prohibitions, the federal government must take affirmative steps to accommodate federal workers with disabilities. Failure to provide a reasonable accommodation for a qualified employee with a disability constitutes discrimination unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1614.203(b) (noting that "[t]he standards used

to determine whether Section 501 has been violated in a complaint alleging employment discrimination under this part shall be the standards applied under the ADA."); *id.* § 1630.9(a).

186. Plaintiff Hoi Yee Baxter is a qualified individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(20); *see also* 42 U.S.C. § 12102. The Rehabilitation Act defines a person with a disability as any person who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such an impairment.

187. EOIR was on notice of Ms. Baxter's disabilities based on her first reasonable accommodation request in December 2024, her reasonable accommodation renewal request on December 23, 2025, and her submission of DOJ Form 100A on January 5, 2026.

188. Ms. Baxter can perform the essential functions of her job with the reasonable accommodation of teleworking.

189. Ms. Baxter has demonstrated that the in-office alternative accommodations EOIR suggested would be ineffective.

190. EOIR ended the interactive process with Ms. Baxter before determining an adequate reasonable accommodation.

191. EOIR failed to demonstrate that granting telework as a reasonable accommodation would constitute an undue burden for the agency.

192. Ms. Baxter does not have an adequate remedy at law to redress the violations alleged herein and therefore seeks injunctive relief restraining EOIR from continuing to engage in the unlawful policies and practices alleged herein. Ms. Baxter also seeks all other forms of relief available as a result of EOIR's ongoing and continuing discrimination including, without limitation, a sufficient reasonable accommodation, reinstatement of leave, correction of records,

41

nonpecuniary compensatory damages, pecuniary damages, back and front pay, equitable relief, interest, attorneys' fees and costs, and any other relief available under the law to make herself whole.

## PRAYER FOR RELIEF

On behalf of themselves and others similarly situated, Plaintiffs respectfully request that this Court:

a. Declare that the suit is maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2);

b. Declare that EOIR's No Telework Accommodations Policy and Practice violates Section 501 of the Rehabilitation Act;

c. Grant preliminary and permanent injunctive relief barring implementation of EOIR's No Telework Accommodations Policy and Practice;

d. Grant preliminary and permanent injunctive relief directing Defendant to implement a legally compliant reasonable accommodation process in which EOIR participates in good faith;

e. Grant preliminary and permanent injunctive relief directing EOIR to grant interim telework reasonable accommodations to class members, until their claims are fully adjudicated via a legally compliant reasonable accommodation process;

f. Grant preliminary and permanent injunctive relief directing EOIR to grant permanent full-time telework, and, as needed, any other appropriate accommodation, as a reasonable accommodation to Plaintiffs Kimberly Panian and Hoi Yee Baxter;

g. Order Defendant to make whole Plaintiffs Kimberly Panian and Hoi Yee Baxter by providing appropriate back pay, front pay, and benefits with prejudgment interest; compensatory damages for past and future pecuniary losses resulting from EOIR's

42

failure to accommodate; restoration of annual leave, sick leave, and personal days used due to EOIR's failure to accommodate; compensatory damages for emotional distress, and other affirmative and equitable relief necessary to eradicate the effects of their unlawful practices;

h.  Award Plaintiffs their costs, reasonable attorneys' fees, and other disbursements deemed appropriate; and

i.  Grant such other relief as the Court deems necessary, just, and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all issues so triable in this case.

Date: June 3, 2026

Respectfully submitted,

/s/ Catherine M.A. Carroll
Catherine M.A. Carroll (Va. Bar No. 50939)
Anashua Dutta[+]
Louis Katz[+]
Elena Goldstein[+]
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 921-4875
ccarroll@democracyforward.org
adutta@democracyforward.org
lkatz@democracyforward.org
egoldstein@democracyforward.org

Heidi Burakiewicz[+]
Sophia Serrao[+]
Burakiewicz & DePriest
1120 Connecticut Avenue NW, Suite 500
Washington, DC 20036
Phone: (202) 856-7500
Fax: (202) 217-2599
hburakiewicz@bdlawdc.com
sserrao@bdlawdc.com

*Counsel for Plaintiffs*

[+] Motion to appear pro hac vice forthcoming