UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **KIMBERLY PANIAN** and <br><br> **HOI YEE BAXTER**, <br><br>         Plaintiffs, <br> v. <br><br> **TODD W. BLANCHE**, in his official capacity as Acting Attorney General of the United States, <br><br>         Defendant. | **Case No. 1:26-cv-01537** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

BACKGROUND .................................................................................................................3

   A.  EOIR's Legal Obligation to Accommodate Employees with Disabilities ...........................3

   B.  Plaintiffs Kimberly Panian and Hoi Yee Baxter ..................................................4

      1.  Plaintiff Kimberly Panian ...............................................................................4

      2.  Plaintiff Hoi Yee Baxter ................................................................................8

   C.  This Lawsuit.................................................................................................12

LEGAL STANDARD.......................................................................................................12

ARGUMENT .................................................................................................................13

   I.   Plaintiffs are Likely to Succeed on the Merits..................................................13

      A.  Plaintiffs Have Exhausted Their Administrative Remedies ...........................13

      B.  Plaintiffs Are Likely to Succeed in Establishing that EOIR Violated Section 501 of the Rehabilitation Act ...............................................................................16

         1.  Plaintiffs Have Disabilities.................................................................17

            a.  Ms. Panian is an individual with a disability ...............................17

            b.  Ms. Baxter is an individual with a disability .............................18

         2.  EOIR Had Notice of Plaintiffs' Disabilities ...........................................19

         3.  Plaintiffs Can Perform the Essential Functions of Their Roles with the Necessary Reasonable Accommodation of Full-time Telework ...........................................20

            a.  EOIR Has Conceded that Telework is Reasonable ...................20

            b.  Plaintiffs Can Perform the Essential Functions of Their Jobs with the Necessary Accommodation of Telework....................................................22

         4.  EOIR Discriminated Against Plaintiffs by Refusing to Grant Their Requests for Telework Reasonable Accommodations ...........................................24

            a.  EOIR refused to grant Ms. Panian a reasonable accommodation .............25

            b.  EOIR refused to grant Ms. Baxter a reasonable .........................................26

            c.  EOIR discriminated against Plaintiffs on the basis of disability ...............27

   II.   Plaintiffs Will Suffer Irreparable Harm Absent Relief.......................................27

      A.  Imminent and Serious Risk to Plaintiffs' Health and Lives…………..……………...28

      B.  Denial of Equal Treatment.................................................................................29

   III.   The Equitable Factors Strongly Favor Emergency Relief ................................29

CONCLUSION ........................................................................................................30

i

**TABLE OF AUTHORITIES**

**Cases**

*Bonnette v. D.C. Court of Appeals*,
  796 F. Supp. 2d 164 (D.D.C. 2011) ....................................................................2, 29

*Carr v. Reno*,
  23 F.3d 525 (D.C. Cir. 1994) ................................................................................21

*Davis v. Fort Bend Cnty.*,
  893 F.3d 300 (5th Cir. 2018).............................................................................13, 15

*Fleetwood v. Harford Sys.*,
  380 F. Supp. 2d 688 (D. Md. 2005) ...............................................................24, 26, 27

*Haneke v. Mid-Atlantic Cap. Mgmt.*,
  131 Fed. App'x 399 (4th Cir. 2005)........................................................................16

*Hannah P. v. Coats*,
  916 F.3d 327 (4th Cir. 2019)............................................................................24, 26

*Humphrey v. Mem'l Hosps. Ass'n*,
  239 F.3d 1128 (9th Cir. 2001) ...............................................................................21

*Jacobs v. N.C. Admin. Off. of the*,
  *Cts.*, 780 F.3d 562 (4th Cir. 2015)..........................................................................20

*Jennings v. Frostburg State Univ.*,
  679 F. Supp. 3d 240 (D. Md. 2023) .......................................................................19

*Kapche v. Holder*,
  677 F.3d 454 (D.C. Cir. 2012) ..............................................................................18

*Kelley v. Mayorkas*,
  694 F. Supp. 3d 715 (E.D. Va. 2023) .....................................................................23

*Lamb v. Qualex*,
  33 F. App'x 49 (4th Cir. 2022)..............................................................................20

*Lilly v. Harris-Teeter Supermarket*,
  720 F.2d 326 (4th Cir. 1983)................................................................................15

*Mathis v. U.S. Parole Comm'n*,
  749 F. Supp. 3d 8 (D.D.C. 2024) .....................................................................16, 29, 30

*Miranda v. Garland*,
  34 F.4th 338 (4th Cir. 2022)..............................................................................12, 29

*Moore v. Kempthorne*,
  464 F. Supp. 2d 519 (E.D. Va. 2006) ........................................................12

*Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*,
  918 F.3d 353 (4th Cir. 2019) .....................................................................12

*Ne. Fla. Ch. of Assoc. Gen. Contractors v. City of,*
  *Jack.*, 508 U.S. 656 (1993) .......................................................................29

*Nken v. Holder*,
  556 U.S. 418 (2009)...............................................................................12, 29

*Pandazides v. Va. Bd. of Educ.*,
  13 F.3d 823 (4th Cir. 1994) ........................................................................16

*Peeples v. Clinical Support Options*,
  487 F. Supp. 3d 56 (D. Mass. 2020) ..........................................................16

*Perdue v. Sanofi-Aventis U.S.*,
  999 F.3d 954 (4th Cir. 2021).......................................................................27

*Pursuing Am.'s Greatness v. Fed. Election Comm'n*,
  831 F.3d 500 (D.C. Cir. 2016) ....................................................................30

*Reyazuddin v. Montgomery* Cnty., Md.,
  789 F.3d 407 (4th Cir. 2015)...........................................................16, 19, 24

*Roe v. Dep't of Def.*,
  947 F.3d 207 (4th Cir. 2020).......................................................................30

*Roe v. Shanahan*,
  359 F. Supp. 3d 382 (E.D. Va. 2019) ..........................................................30

*Schneider v. Giant of Md., LLC*,
  389 F. App'x 263 (4th Cir. 2010).................................................................19

*Smith v. CSRA*,
  12 F.4th 396 (4th Cir. 2021)...................................................................16, 20

*Stewart v. Iancu*,
  912 F.3d 693 (4th Cir. 2019)..................................................................13, 15

*Szedlock v. Tenet*,
  139 F.Supp.2d 725 (E.D. Va. 2001) ............................................................16

*Thetford Props. IV Ltd. P'ship v. U.S. Dep't of Hous. & Urb. Dev.*,
  907 F.2d 445 (4th Cir. 1990).......................................................................15

*U.S. ex rel. $12,642.00 U.S. Currency v. Com. of Va.*,
  2003 WL 23710710 (E.D. Va. 2003) ................................................................................12

*U.S. ex rel. Rahman v. Oncology Assocs., P.C.*,
  198 F.3d 502 (4th Cir. 1999) ............................................................................................15

*Ways v. Wash. Metro. Area Transit Auth.*,
  2026 WL 776070 (D. Md. March 19, 2026) ......................................................................18

*Wiley v. Kennedy*,
  789 F. Supp. 3d 447 (S.D.W.V. 2025) .........................................................................28, 29

*Wilkinson v. Rumsfeld*,
  100 F. App'x 155 (4th Cir. 2004) .....................................................................................13

*Williams v. Va. Polytechnic Inst.*,
  451 F. Supp. 3d 467 (E.D. Va. 2020) ....................................................................16, 19, 20

*Wilson v. Pena*,
  79 F.3d 154 (D.C. Cir. 1996) ...........................................................................................15

*Works v. Berryhill*,
  686 F. App'x 192 (4th Cir. 2017) ......................................................................................19

*Works v. Colvin*,
  93 F. Supp. 3d 405 (D. Md. 2015) ....................................................................................19


**Statutes**
29 U.S.C. § 705 ......................................................................................................................17
29 U.S.C. § 791 ........................................................................................................................3
29 U.S.C. § 794a......................................................................................................................13
42 U.S.C. § 12102 ...................................................................................................................17
42 U.S.C. § 12111....................................................................................................................3
42 U.S.C. § 2000e-16 ........................................................................................................13, 14


**Regulations**

29 C.F.R. § 1614.105 ..............................................................................................................13
29 C.F.R. § 1614.106 ..............................................................................................................13
29 C.F.R. § 1614.203 ................................................................................................................3
29 C.F.R. § 1614.204 ..............................................................................................................13
29 C.F.R. § 1614.407 .........................................................................................................13, 14

29 C.F.R. § 1630.2 ...................................................................................3, 17, 19, 22, 23


**Other Authorities**

1990 U.S.C.C.A.N. 303 ......................................................................................................24

EEOC Management Directive-110, ch. 8 (2015) ..............................................................14

*Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA*,
    EEOC (Oct. 17, 2002), https://perma.cc/ESH2-ZKQ3 .............................................21

*Federal Remote Work: OPM Guidance Could Help Relevant Agencies Evaluate Effects on
    Agency Performance*, GOA (Jun. 17, 2025), https://perma.cc/V3YC-TVAJ ............21

H.R. Rep. 92-238 (June 2, 1971)........................................................................................13

H.R. Rep. No. 101–485, pt. 2 (1990) .................................................................................24

*Immigration Judge*, USAJobs, https://perma.cc/WX6E-7BCZ .......................................21

Internal Policy Statement, DOJ, Reasonable Accommodation (Sep. 23, 2019),
    https://perma.cc/QWX4-HH62 .....................................................................................3

Internal Instruction, DOJ, Reasonable Accommodation Process (Sep. 23, 2019),
    https://perma.cc/B6S4-5Z3Y ........................................................................................3

Job Listing for Attorney Advisor GS-0905-13/14/15, DOJ (Apr. 4, 2025),
    https://perma.cc/KR5S-8AYD .....................................................................................22

Job Listing for Attorney Advisor GS-13/14/15, DOJ (Apr. 25, 2025) https://perma.cc/Y3N4-
    URZ8...........................................................................................................................23

*Pippen v. Bondi*, EEOC No. 460-2025-00162X (Dec. 10, 2025)......................................14

Presidential Memorandum of January 20, 2025, Return to In-Person Work, 90 Fed. Reg. 8251
    (Jan. 20, 2025)...............................................................................................................6

*Telework in the Federal Government Report to Congress: Fiscal Year 2024*, U.S. Off. Of Pers.
    Mgmt. (Dec. 2025), https://perma.cc/EWN8-7BZR....................................................21

**INTRODUCTION**

The Executive Office of Immigration Review ("EOIR") denied Plaintiffs Kimberly Panian and Hoi Yee Baxter telework as a reasonable accommodation in violation of Section 501 of the Rehabilitation Act, forcing them to make an impossible choice: keep their jobs but risk their health and lives by returning to in-person work as early as next week or face termination and the resulting loss of their health insurance and livelihoods.

Plaintiffs—Attorney Advisors who have worked for EOIR for almost ten years each— are able to perform the essential functions of their jobs with a telework accommodation. Ms. Panian, for whom EOIR has previously approved telework accommodations, must telework because her disabilities—Type I diabetes that causes rapid swings in blood sugar and severe migraines with aura—necessitate reliable access to medical equipment and immediate medical assistance, neither of which is available at her on-site workplace where there is limited cell service and it can take dangerously long to get in and out of the building. Failure to receive medical assistance in time can be a matter of life and death. Ms. Baxter, for whom EOIR has previously approved a telework accommodation, has Stage IV lung cancer, which leaves her highly susceptible to infections. She also experiences many side effects from treatment, including fatigue, nausea, constipation, severe heartburn, and an elevated heartrate. Even absent those side effects, Ms. Baxter must telework because going into the office means being forced to come into contact with life-threatening germs. A cold or the flu can lead to a trip to the emergency room, with severe or fatal consequences.

Before EOIR's about-face, both Plaintiffs teleworked for years while receiving top performance reviews. In denying Plaintiffs' latest reasonable accommodation requests, EOIR failed to propose alternative effective accommodations, identify any legitimate deficiencies in their medical documentation, or point to any undue hardship to the agency attendant to their requests.

1

Absent preliminary relief, Plaintiffs will each face imminent irreparable harm. Being forced to work under discriminatory conditions, including without necessary reasonable accommodations, is itself a form of irreparable injury warranting a preliminary injunction. *Bonnette v. D.C. Court of Appeals*, 796 F. Supp. 2d 164, 187 (D.D.C. 2011) (collecting cases). But for Ms. Panian and Ms. Baxter, the harms are even more grave and tangible. Since EOIR denied their telework reasonable accommodation requests, each Plaintiff has used combinations of sick and annual leave to protect their health and their jobs. But they are each now on the verge of exhausting their leave. EOIR has communicated to Plaintiffs that they will be subject to disciplinary proceedings—which could include the loss of their jobs—if they do not return to work in person. EOIR is forcing Plaintiffs to return to full-time work in-person this month, putting their health and lives at risk.

Indeed, as alleged in Plaintiffs' class action complaint, the evidence and experience of Plaintiffs and their colleagues indicate that EOIR has an agency-wide unlawful policy and practice of predetermining that telework accommodations are never appropriate and refusing to engage in good faith when such accommodations are requested. The present motion, however, seeks relief only for Plaintiffs' individual circumstances given the individual irreparable harm they face.

Plaintiffs have devoted their careers to serving the federal government and this country. They deeply want to continue supporting the work of their colleagues and the immigration courts but require telework reasonable accommodations to do so safely. Because EOIR's denials of Plaintiffs' telework accommodation requests violate Section 501 of the Rehabilitation Act, and because of the severity of the irreparable harm these denials will imminently impose, Plaintiffs ask this Court to issue a preliminary injunction requiring Defendant to immediately restore Ms. Panian and Ms. Baxter their full-time telework reasonable accommodations.

## BACKGROUND

### A.        EOIR's Legal Obligation to Accommodate Employees with Disabilities

As a component of the U.S. Department of Justice ("DOJ"), EOIR is subject to Section 501 of the Rehabilitation Act ("Section 501"). 29 U.S.C. § 791 *et seq.*; 29 C.F.R. § 1614.203 *et seq.* (Section 501 implementing regulations). Section 501 prohibits discrimination on the basis of disability against "qualified individual[s]" employed in the federal sector. 29 U.S.C. § 791(f). A "qualified individual" is "an individual [with a disability] who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m).[1] Under Section 501, a federal government agency must offer a reasonable accommodation if the accommodation would allow the employee with a disability to fulfill the essential duties of their job without imposing an undue hardship on their employer. 29 C.F.R. §§ 1614.203(a)(10), 1630.2(o)(4).

EOIR's reasonable accommodation process is purportedly governed by two written policies: the DOJ Reasonable Accommodation Policy[2] and the DOJ Reasonable Accommodation Process Policy.[3] The former reiterates the agency's responsibilities under Section 501, including its responsibility to provide reasonable accommodations for employees with disabilities "using an interactive process that will respond to requests for reasonable accommodation in a flexible, confidential, and objective manner." The policy includes examples of reasonable accommodations, including "modifying a work schedule" and "providing telework." *Id.* at 9-10.

---

[1] Enforcement of Section 501 is governed by the same standards as Title I of the ADA. 29 U.S.C. § 791(f); 29 C.F.R. § 1614.203 (same); *see also* 42 U.S.C. § 12111 *et seq.* (Title I of the ADA).
[2] Internal Policy Statement, DOJ, Reasonable Accommodation (Sep. 23, 2019), https://perma.cc/QWX4-HH62 ("DOJ Reasonable Accommodation Policy").
[3] Internal Instruction, DOJ, Reasonable Accommodation Process (Sep. 23, 2019), https://perma.cc/B6S4-5Z3Y ("DOJ Reasonable Accommodation Process Policy").

EOIR employees can use DOJ Form 100A to request a reasonable accommodation. Form 100A prompts the employee to provide their disability, requested accommodation, and to "[e]xplain how the requested accommodation(s) would assist you in performing your essential job[] functions or enable you to access a benefit or privilege of employment." Employees may also append supporting medical documentation. The DOJ Reasonable Accommodation Process Policy requires the agency to work with the employee to identify an accommodation that will effectively address the employee's disability-related needs while allowing the employee to perform the essential functions of the job.

EOIR typically uses DOJ Form 100B to communicate accommodation denials. Form 100B instructs the agency to "check all [reasons] that apply" for the denial, including "accommodation ineffective/inappropriate," "accommodation would cause undue hardship," "employee did not accept an alternative accommodation offered," "medical documentation inadequate," "accommodation would require removal of essential function," and "accommodation would require lowering of performance or production standard." The agency must provide "detailed reason(s) for the denial of [the] reasonable accommodation" and, if an alternative accommodation was offered and not accepted, "explain how the alternative accommodation addresses the limitation and why you believe the chosen accommodation would be effective."

**B.    Plaintiffs Kimberly Panian and Hoi Yee Baxter**

Plaintiffs are qualified individuals with disabilities who have teleworked for years while maintaining top performance reviews.

**1.  Plaintiff Kimberly Panian**

Ms. Panian began working for EOIR in September 2018 as a Judicial Law Clerk following her graduation from the University of Pennsylvania School of Law. Panian Decl. ¶ 2. In October

4

2019, she began a permanent position as an Attorney Advisor at the Otay Mesa Immigration Court in San Diego, California. *Id.* ¶ 3.

Shortly before she began at EOIR, Ms. Panian was diagnosed with Type I diabetes. She was hospitalized for nearly a week in critical condition with severe Diabetic Ketoacidosis ("DKA"), a life-threatening complication of diabetes. *Id.* ¶ 5. Her endocrinologist later specified that her diabetes is brittle/labile, which causes severe and rapid swings in blood sugar. *Id.* ¶ 6. She also experiences severe migraines with aura that can cause aphasia, loss of vision and feeling in her fingers, vomiting, severe pain, and disorientation. *Id.* ¶ 10. During a severe migraine, Ms. Panian is also unable to manage her blood sugar, which puts her at considerable risk of low blood sugar and DKA; indeed, she has suffered several episodes of DKA. *Id.* ¶¶ 12, 15-16, 18.

Due to her disabilities, Ms. Panian requires telework as a reasonable accommodation to safely perform the essential functions of her job. In reasonable accommodation requests she submitted to EOIR from 2020 to 2024, Ms. Panian documented that a full-time telework accommodation facilitated access to emergency care and her many medications and medical equipment and supported her ability to address hyper- and hypoglycemia events. Ms. Panian detailed how a telework accommodation ensured access to caregivers who (unlike her colleagues) were trained to assist her in a medical emergency. She also documented the risks (including the court's remote location, the long time it takes to get in and out of the facility, the lack of trained individuals to administer her medication, and the court's poor cell service) of having an equipment malfunction or medical emergency in a workplace not equipped to rapidly respond. *Id.* ¶¶ 19-27. And for years, EOIR agreed and regularly granted her telework accommodation requests from March 2020 through 2024. *Id.* ¶¶ 19, 23, 25, 28. Separate from those accommodations, Ms. Panian also entered into agreements with her supervisor permitting telework without regard to her

disabilities. *Id.*¶¶ 26, 29-30. Ms. Panian regularly received top performance reviews while teleworking. *Id.* ¶¶ 31-39.

Following President Trump's directive that agencies should "require employees to return to work in-person," Presidential Memorandum of January 20, 2025, Return to In-Person Work, 90 Fed. Reg. 8251 (Jan. 20, 2025) ("Return to Work Memorandum"), EOIR canceled all existing telework agreements on February 24, 2025. Ex. 1 (Feb. 19 Owen Memo). EOIR also announced that it would take a "closer look" at employees with disabilities who relied on telework reasonable accommodations. Ex. 2 (April Owen Email).

Consistent with these policies and directives, EOIR canceled Ms. Panian's existing telework agreement. Panian Decl. ¶ 40. Ms. Panian then requested a reasonable accommodation of full-time telework. *Id*. In this request, she again disclosed her medical conditions and detailed her need for full-time telework, reiterating the reasons she had previously shared with EOIR in past accommodation requests. *Id*. In response to EOIR's request for medical documentation, Ms. Panian submitted a letter from her primary care physician, who explained that she "needs [a] reasonable accommodation to work remotely" due to her "chronic and permanent" medical conditions. *Id.* ¶ 42. Meanwhile, Ms. Panian separately signed and continued teleworking under a two-year full-time telework agreement with her supervisor. *Id.* ¶ 41.

On May 7, 2025, Ms. Panian met with EOIR's Deciding Official, Deputy General Counsel Nathan Henriksen, and Acting Senior Associate General Counsel Patricia Allen to discuss her accommodation request. Mr. Henriksen began the discussion by stating he assumed EOIR would not grant telework. *Id*. ¶ 43. He also admitted that EOIR had changed its position on telework and had not granted any requests for telework accommodations under the new administration. *Id*.

In the face of these categorical statements, Ms. Panian repeatedly attempted to explain that telework helps her perform her job. She emphasized her need to have trained individuals close by to administer medication when her blood sugar plummets and the risks of equipment malfunctioning at the office or having an emergency at the immigration court, where there is limited cell service and it can take dangerously long to get in and out of the building. *Id*. ¶¶ 44-46. In response, they urged Ms. Panian to withdraw her telework reasonable accommodation request, warning her that if she did not withdraw it, she risked jeopardizing her existing telework agreement with her supervisor. *Id*. ¶ 30, 46 ("reasonable accommodation provides much more protection than an agreement with a supervisor since telework agreements can, and have been, withdrawn at any time for whatever reason").

Instead of engaging with her request for telework, Mr. Henriksen offered Ms. Panian alternative in-office "accommodations," such as bathroom breaks, keeping her diabetes supplies nearby, using a chair, and working a modified work schedule. Ms. Panian explained that due to the life-threatening nature of her disabilities, these accommodations and features of the EOIR offices would not be effective. Nonetheless, Mr. Henriksen mischaracterized her request as a "preference" rooted in "convenience." *Id*. ¶ 46. Ms. Panian asked Mr. Henriksen what undue burden telework would pose to EOIR. He could not articulate an answer. *Id*. ¶ 45.

Later that day, Mr. Henriksen issued a formal written denial of Ms. Panian's request for telework as a reasonable accommodation. *Id*. ¶ 48. He checked off three reasons for the denial: "accommodation ineffective/inappropriate," "employee did not accept an alternative accommodation offered," and "medical documentation inadequate." *Id*.

Ms. Panian twice sought reconsideration, but EOIR denied each request. *Id*. ¶¶ 50-53. Although Ms. Panian supported these requests with additional doctor's notes and medical

information, EOIR did not address this information, simply stating that it would uphold its initial denial on the incorrect ground that she had declined to discuss alternative accommodations. *Id*.

Ms. Panian subsequently initiated counseling with EOIR's Equal Employment Opportunity ("EEO") Office, but that yielded no resolution, and she received a notice of right to file a formal complaint. *Id.* ¶ 56. On July 13, 2025, Ms. Panian timely filed a formal complaint, including both individual and class claims. *Id.* ¶ 57. In August 2025, the EOIR EEO acknowledged her complaint and transmitted it to the Equal Employment Opportunity Commission ("EEOC") for consideration of the class certification issue. *Id.* ¶ 58. As of June 16, 2026, the EEOC has not issued a decision regarding class certification. *Id.* ¶ 59.

On April 6, 2026, EOIR revoked the telework agreement Ms. Panian had entered into with her supervisor and ordered her to return to in-person work by April 20, 2026. *Id*. ¶ 54. Since April 20, 2026, Ms. Panian has been using sick and annual leave to avoid risking her health by reporting into the office. *Id.* ¶ 55. That option will soon vanish. At the time of this filing, Ms. Panian has exhausted over 300 hours of leave and will run out of available leave by the end of June. *Id*. If Ms. Panian does not report to work in person thereafter, she will face the prospect of disciplinary proceedings and potential termination. Thus, in a matter of days, Ms. Panian will be forced to choose between her health (or even her life) and her livelihood. As a result, she lives in constant fear. EOIR's order that she return to work in-person has worsened her mental health and exacerbated her diabetes, migraines, and related symptoms. *Id.* ¶¶ 60-71.

### 2. Plaintiff Hoi Yee Baxter

Ms. Baxter began working for EOIR in September 2018 as a Judicial Law Clerk in the Attorney General's Honors Program following her graduation from North Carolina Central University of Law. Baxter Decl. ¶ 2. In February 2022, she began a permanent position as an

8

Attorney Advisor for EOIR's Office of Policy ("OP") in the Legal Education and Research Services Division ("LERS"). *Id.* ¶ 4.

In September 2024, Ms. Baxter was diagnosed with Stage IV lung cancer. She is in chemotherapy and has undergone a lobectomy and radiation. *Id.* ¶ 7. As a result of her cancer and treatment, Ms. Baxter is severely immuno-compromised and experiences fatigue, nausea, constipation, diarrhea, severe heartburn, and elevated heart rates. *Id.* ¶¶ 8-9.

Due to her disabilities, Ms. Baxter requires telework as a reasonable accommodation so that she can safely perform the essential functions of her job. When Ms. Baxter first requested a telework reasonable accommodation in December 2024, based on her cancer diagnosis and side effects from treatment, EOIR agreed, granting her a full-time telework accommodation in January 2025. *Id.* ¶¶ 20-22. Ms. Baxter had also teleworked full-time pursuant to telework agreements for almost four years before receiving a telework reasonable accommodation. *Id.* ¶ 11. Ms. Baxter regularly received top performance reviews while teleworking. *Id.* ¶¶ 11-19.

With her telework accommodation due to expire at the end of 2025, Ms. Baxter renewed her request for a telework reasonable accommodation. *Id.* ¶¶ 23-24. In support, Ms. Baxter provided a letter from her oncologist explaining that she is "immune-susceptible" from chemotherapy and experiences "fatigue, nausea, constipation, diarrhea, . . . severe heartburn, and compromised immune responses." He advised that "remote work" "would help ensure that [Ms. Baxter] can [d]o her job safely and effectively without undue burden" to EOIR. *Id.* ¶ 23.

On January 21, 2026, Ms. Baxter met with Mr. Henriksen and EOIR Fraud Counsel Alex Spindler to discuss her request. *Id.* ¶ 29. As he had done in Ms. Panian's case, Mr. Henriksen steered Ms. Baxter away from telework, instead offering her a private office, ergonomic chair, and air purifier. *Id.* ¶ 30. Ms. Baxter responded that these accommodations would be ineffective

because none would protect her from having contact with others in communal areas such as the bathroom, breakroom, lobby, and elevator, where she would be at risk of contracting illnesses such as the flu—illnesses that could be a matter of life and death given her weakened immune system. She also explained that she needed to be able to move around during the day to avoid blood clots, which she could not do safely in the office because of the heightened risk of encountering germs. Additionally, she described how remote work (as well as the agency-permitted maxi-flex schedule) enabled her to perform her work while managing her fatigue and other symptoms. *Id.* ¶¶ 31-32.

The following day, Mr. Henriksen issued a formal written denial of Ms. Baxter's telework accommodation request. *Id.* ¶ 35. In the Form 100B, Mr. Henriksen checked off two reasons for the denial: "accommodation ineffective/inappropriate" and "employee did not accept an alternative accommodation offered." Under reason for denial, he stated that Ms. Baxter "was not interested" in discussing in-office accommodations, that she was concerned with exposure to illnesses from office staff, and that neither Ms. Baxter nor her medical documentation had specified any workplace barrier resulting from any disability. *Id.* The Form 100B did not assert that allowing Ms. Baxter to telework would impose any hardship on EOIR or that Ms. Baxter could not perform the essential functions of her job from home. On January 27, 2026, Ms. Baxter received a notice from EOIR directing her to return to in-office work by February 2, 2026. *Id.* ¶ 36.

Ms. Baxter twice sought reconsideration, but EOIR denied each request. *Id*. ¶¶ 38-40, 43. Although Ms. Baxter supported these requests with additional doctor's notes and medical information, EOIR did not address this information, simply stating (inaccurately) that neither Ms. Baxter nor her doctors had explained why working in-office with the accommodations Mr. Henriksen had offered would be insufficient. *Id*. ¶¶ 30-32.

10

Meanwhile, Ms. Baxter initiated counseling with EOIR's EEO Office and began using her sick leave. *Id*. ¶¶ 37, 46. On February 26, 2026, EOIR's EEO Office provided her a notice of right to file a formal complaint, which she filed later that same day. *Id*. ¶¶ 46-47. EOIR informed Ms. Baxter that it was holding her claim in abeyance because it was substantively identical to a previously filed class complaint. *Id*. ¶ 48. As of the date of this filing, EOIR's EEO Office is still holding Ms. Baxter's complaint in abeyance.

On March 20, 2026, EOIR notified Ms. Baxter that she had to return to work in-person by March 27, 2026 and demanded "administratively acceptable medical documentation" to support her use of sick leave. *Id*. ¶ 41. She responded with another letter from her physician reiterating that she either "telework full time so that she can work effectively without further jeopardizing her health" or take leave in the absence of a telework accommodation. *Id*. ¶ 42.

Consistent with that recommendation, Ms. Baxter has continued to use sick and annual leave since EOIR denied her telework reasonable accommodation request. At the time of this filing, she has exhausted over 600 hours of sick and annual leave and has only a handful of available days remaining. *Id*. ¶ 44.

For Ms. Baxter, it has been a "dream to become a lawyer and to work for the federal government, so that [she] can give back to this country that welcomed [her] with open arms and provided [her] with an opportunity to succeed." *Id*. ¶ 50. As a result of EOIR's denial of her telework accommodation, Ms. Baxter worries every day about dying from lung cancer and its complications. *Id*. She fears catching an infection that will reduce the length of her life or kill her. *Id*. The idea of working in-person at the office terrifies her, but she cannot risk losing her job because she and her family depend on her health insurance for her cancer treatment. *Id*. ¶ 49.

11

### C.    This Lawsuit

On June 3, 2026, Plaintiffs filed suit against Defendant Acting Attorney General Todd Blanche, alleging that EOIR had violated Section 501 by denying their telework accommodation requests. *See* Complaint, ECF No. 1. Plaintiffs also allege, on behalf of themselves and a class of EOIR employees denied telework accommodations, that EOIR has adopted a policy and practice of predetermining that telework accommodations are never appropriate and refusing to engage in a good-faith reasonable accommodation process when such accommodations are requested.

### LEGAL STANDARD

To obtain a preliminary injunction, "a plaintiff must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm without the preliminary injunction; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest." *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019); *see also Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) ("The standard for granting either a [temporary restraining order] or a preliminary injunction is the same." (quoting *U.S. ex rel. $12,642.00 U.S. Currency v. Com. of Va.*, 2003 WL 23710710, *1 (E.D. Va. 2003))). The last two factors "merge when the Government is the opposing party." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## ARGUMENT

### I.    Plaintiffs are Likely to Succeed on the Merits

Plaintiffs are likely to establish that they have exhausted their administrative remedies and that Defendant violated Section 501 by denying their requests for full-time telework reasonable accommodations.

### A.  Plaintiffs Have Exhausted Their Administrative Remedies

Federal employees seeking to invoke Section 501 "must comply with the same administrative procedures that govern federal employee Title VII claims." *Stewart v. Iancu*, 912 F.3d 693, 698–99 (4th Cir. 2019) (first quoting *Wilkinson v. Rumsfeld*, 100 F. App'x 155, 157 (4th Cir. 2004)); *see also* 29 U.S.C. § 794a(a)(1). Under procedures laid out by the EEOC, a victim of discrimination must first consult with an agency EEO counselor to attempt to reach an informal resolution. 29 C.F.R. §§ 1614.105(a), 1614.204(b). If the matter is not resolved by counseling, the counselor provides the employee with notice of their right to file a complaint, *id.* § 1614.105(d)–(f), which the employee then must file within 15 days, *id.* §§ 1614.106(a)–(b), 1614.204(c)(2).

If no action is taken on a formal complaint within 180 days, a plaintiff may sue in federal court. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(b). Unlike the requirement to file a formal EEO complaint, this 180-day waiting period is "not a paradigmatic exhaustion requirement" because it is "satisfied by agency *inaction*." *Stewart*, 912 F.3d at 699 (emphasis in original). The 180-day waiting period is not a "jurisdictional requirement" but rather a "prudential prerequisite to suit." *Id.* at 701 (quoting *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 305 (5th Cir. 2018)). The Fourth Circuit has recognized that section 2000e-16(c) was enacted in response to congressional concerns that "federal employees frequently encountered an 'administrative quagmire' in filing charges of discrimination" and has interpreted section 2000e-16 to reflect that congressional purpose of combatting agency delay. *Id.* at 699 (quoting H.R. Rep. 92-238, at 12 (June 2, 1971)).

13

Plaintiffs Panian and Baxter have each exhausted their administrative remedies. After her telework reasonable accommodation was denied on May 7, 2025, Ms. Panian timely contacted EOIR's EEO office to initiate counseling on May 8, 2025. Panian Decl. ¶ 56. On July 1, 2025, she received a notice of right to file a formal complaint. *Id*. On July 13, 2025, she filed a formal complaint seeking both individual and class-wide relief. *Id*. ¶ 57. More than 180 days have elapsed since Ms. Panian filed her formal complaint, and the EEOC has not taken any action. She thus is entitled to sue in federal district court. *See* 29 C.F.R. § 1614.407(b); 42 U.S.C. § 2000e-16.

Ms. Baxter has likewise exhausted all available administrative remedies. On January 27, 2026, after EOIR denied her telework reasonable accommodation request, she initiated counseling with EOIR's EEO office. Baxter Decl. ¶ 46. On February 26, 2026, the EEO office notified her she could file a formal complaint. *Id.* That same day, she filed a formal complaint. *Id.* ¶ 47. On April 7, 2026, EOIR notified Ms. Baxter that it was holding her complaint in abeyance pending resolution of a previously filed and substantively identical class complaint. *Id.* ¶ 48.

Under EEOC policy, however, EEOC will not adjudicate Ms. Baxter's complaint within the 180-day window, and no further process is available to exhaust. This is so for two reasons. First, EEOC has instructed its administrative judges to not process any class claims involving federal employees. As one administrative judge put it in a December 2025 order, "all class cases in the federal sector" have been "paused until further notice." Ex. 3 (Notification of Case Processing Abeyance at 1, *Pippen v. Bondi*, EEOC No. 460-2025-00162X (Dec. 10, 2025). Thus, EEOC has not processed Ms. Panian's claim in the over 300 days since she filed it. Ms. Baxter's claim is subject to the same policy. Second, under EEOC guidance, when a formal class complaint has been filed, subsequently filed complaints raising "identical" claims will be held in abeyance pending adjudication of the earlier-filed claim. EEOC Management Directive-110, ch. 8, § III

14

(2015). Pursuant to that guidance, on April 7, 2026, EEOC informed Ms. Baxter that it was holding her complaint in abeyance because her claim was covered by Ms. Panian's previously filed class complaint. Baxter Decl. ¶ 48. Thus, EEOC will not begin to process Ms. Baxter's complaint unless and until it first resolves Ms. Panian's formal class complaint—which will not happen because of the EEOC's decision not to process class complaints.

Ms. Baxter need not wait for the full 180-day period to expire before filing suit in federal court, as she has exhausted all process that is available to her. As EEOC regulations require, she timely initiated EEO counseling and timely filed a formal complaint. While she has not waited the 180 days, that period is a "prudential prerequisite to suit," not a jurisdictional limit. *Stewart*, 912 F.3d at 701 (quoting *Davis*, 893 F.3d at 300). It was designed to "confine[] agencies and the EEOC to a tight schedule" for adjudicating administrative complaints. *Id.* at 699 (quoting *Wilson v. Pena*, 79 F.3d 154, 167 (D.C. Cir. 1996)). But here, the rule cannot serve that function because EEOC will not process claims like hers no matter their merits. Given that Ms. Baxter's claim will not be adjudicated on any timeline, waiting for another two months would inevitably prove futile. Ms. Baxter need not do so before filing suit. *See Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 335 (4th Cir. 1983) (holding that "exhaustion of EEOC remedies [is] excused" where resort to "EEOC remedies . . . would [be] futile"); *U.S. ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 515 (4th Cir. 1999) (finding exhaustion to be futile where the agency "will not act on the claims presented to [it]" (alteration in original) (citation omitted)); *Thetford Props. IV Ltd. P'ship v. U.S. Dep't of Hous. & Urb. Dev.*, 907 F.2d 445, 449–50 (4th Cir. 1990) ("[N]o litigant is obliged to exhaust inadequate administrative procedures[.]").

15

In light of Ms. Baxter's Stage IV lung cancer, forcing her to delay action for months as EEOC sits on its hands would impose an incalculable cost and serve no purpose. Accordingly, she may, and did, file suit in federal court notwithstanding the prudential 180-day waiting period.

**B. Plaintiffs Are Likely to Succeed in Establishing that EOIR Violated Section 501 of the Rehabilitation Act**

A federal employee must establish four elements to make a prima facie case for failure to accommodate under Section 501: (1) she is an individual with a disability; (2) her employer had notice of her disability; (3) she could perform the essential functions of her job with a reasonable accommodation; and (4) the employer refused to make such accommodations. *See Smith v. CSRA*, 12 F.4th 396, 414 (4th Cir. 2021); *Pandazides v. Va. Bd. of Educ.,* 13 F.3d 823, 833 (4th Cir.1994) (noting that "reasonable accommodation" is a question of fact). "Implicit in the fourth element" is the employer's duty to engage in an interactive process with the employee to identify a reasonable accommodation. *Williams v. Va. Polytechnic Inst.*, 451 F. Supp. 3d 467, 477 (E.D. Va. 2020) (citing *Haneke v. Mid-Atlantic Cap. Mgmt.*, 131 Fed. App'x 399, 400 (4th Cir. 2005)). Once a plaintiff establishes her prima facie claim, the burden shifts to the employer to demonstrate that the requested accommodation would pose an undue hardship. *Reyazuddin v. Montgomery Cnty., Md.*, 789 F.3d 407, 414 (4th Cir. 2015).

"The Rehabilitation Act . . . vests courts with broad discretion to order equitable relief as required in the circumstances of a particular case,'" including authority to grant a specific reasonable accommodation as preliminary relief. *See Szedlock v. Tenet*, 139 F.Supp.2d 725, 732 (E.D. Va. 2001) (internal citations omitted); *Peeples v. Clinical Support Options*, 487 F. Supp. 3d 56, 66 (D. Mass. 2020) (granting preliminary relief of telework as a reasonable accommodation); *Mathis v. U.S. Parole Comm'n*, 749 F. Supp. 3d 8, 22 (D.D.C. 2024) ("Courts possess inherent equitable power to enjoin the Government from violating the Rehabilitation Act.").

16

### 1. Plaintiffs Have Disabilities

Plaintiffs easily meet the first element of the failure to accommodate inquiry. EOIR has repeatedly concluded the same. In its previous grants of Plaintiffs' accommodation requests, EOIR acknowledged that Plaintiffs have disabilities. Panian Decl. ¶¶ 23, 25, 28; Baxter Decl. ¶ 22. And in its most recent denials of Plaintiffs' reasonable accommodation requests, EOIR did not dispute that Plaintiffs have disabilities. Panian Decl. ¶ 48; Baxter Decl. ¶ 35.

An individual with a disability is a person who "has a physical or mental impairment which substantially limits one or more major life activities." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(A); 29 C.F.R. § 1630.2(g)(1). A "physical or mental impairment" is "[a]ny physiological disorder or condition . . . affecting one or more body systems . . . or [a]ny mental or psychological disorder." 29 C.F.R. § 1630.2(h). A substantially limiting impairment is one that "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). The Rehabilitation Act regulations provide a non-exhaustive list of examples of "major life activities" including seeing, eating, walking, standing, speaking, breathing, learning, reading, concentrating, communicating, working, and interacting with others. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(i). Major life activities also include the "operation of a major bodily function," including functions of the immune, respiratory, and endocrine systems. 29 C.F.R. § 1630.2(i)(ii). Neither "substantially limits" nor "major life activities" impose a "demanding standard." *See* 29 C.F.R. §§ 1630.2(j)(1)(i), 1630.2(j)(ii), 1630.2(i).

### a. Ms. Panian is an individual with a disability

Ms. Panian's diabetes and migraines substantially impair several major life activities, including the operation of her immune, endocrine, and neurological systems, and she is thus an individual with a disability. Ms. Panian must constantly monitor her blood sugar levels and

17

administer insulin. Panian Decl. ¶ 9. Her fluctuating blood sugar levels can cause brain fog, nausea, and malaise. *Id.* ¶ 7. She cannot engage in intense physical activities because of the risk her blood sugar will swing even more rapidly. *Id.* ¶ 8. Ms. Panian takes several medications for her diabetes and migraines and must always carry medical equipment with her. *Id.* ¶¶ 7, 9, 14. When she experiences a severe migraine, she cannot manage her blood sugar, which puts her in considerable risk of going into DKA. *Id.* ¶ 15. Due to her complex medical conditions, Ms. Panian lives close to family who know how to care for her when she experiences a migraine or low-blood sugar episode. *Id.* ¶¶ 10, 11, 17.

Moreover, "[b]ecause 'diabetes substantially limits endocrine function,' it is one of those impairments which will '[virtually] always' substantially limit a major life activity and for which 'the necessary individualized assessment should be particularly simple and straightforward.'" *Ways v. Wash. Metro. Area Transit Auth.*, 2026 WL 776070 (D. Md. March 19, 2026) (alteration in original) (citation omitted); *see also Kapche v. Holder*, 677 F.3d 454, 461 (D.C. Cir. 2012).

### b.  Ms. Baxter is an individual with a disability

As a result of her cancer treatments, Ms. Baxter has "chemotherapy induced neutropenia," a condition that leaves her highly susceptible to infections and is thus "immune-susceptible because of the distress that chemotherapy, radiation, and [the] lobectomy have imposed on [her] body." Baxter Decl. ¶¶ 7- 8 (quoting doctors' notes). She is more likely to face severe or even fatal complications from an infection as compared to a healthy person. *Id.* ¶ 8. Ms. Baxter also experiences many side effects from her cancer treatment, including fatigue, nausea, constipation, severe heartburn, and elevated heartrates (which require frequent monitoring). *Id.* ¶ 9. Many of these symptoms can come on suddenly and without warning. *Id.*

Ms. Baxter's cancer and cancer treatment substantially impair the operation of major bodily functions, including normal cell growth and her respiratory and immune systems, and she is thus

18

an individual with a disability. 29 C.F.R. §§ 1630.2(i)(ii), (j)(3)(iii) ("it should be easily concluded" that cancer is a disability because it "substantially limits normal cell growth"). Her medical conditions and suppressed immune system also substantially impair her ability, among other things, to interact with others.

### 2. EOIR Had Notice of Plaintiffs' Disabilities

"The notice requirement . . . is 'not an onerous [burden].'" *Works v. Colvin*, 93 F. Supp. 3d 405, 416 (D. Md. 2015) (quoting *Schneider v. Giant of Md., LLC*, 389 F. App'x 263, 270 (4th Cir. 2010)), *aff'd sub nom. Works v. Berryhill*, 686 F. App'x 192 (4th Cir. 2017) (alteration in original). The "key consideration" is whether the "employee provides the employer with enough information that . . . the employer can be fairly said to know of both the disability and desire for an accommodation." *See Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 286 (D. Md. 2023) (internal quotation marks and citation omitted). This element is typically undisputed when a plaintiff requests a reasonable accommodation from her employer. *See, e.g.*, *Reyazuddin*, 789 F.3d at 414; *Williams*, 451 F. Supp. 3d at 475.

EOIR was on clear notice of Plaintiffs' disabilities. Ms. Panian and Ms. Baxter each submitted reasonable accommodation requests detailing their medical conditions and the impact of those conditions on their major life activities. EOIR received, acknowledged, and responded to those submissions and had previously granted reasonable accommodation requests for each Plaintiff based on their documented disabilities. Panian Decl. ¶¶ 19, 21-28, 40, 42; Baxter Decl. ¶¶ 20-24. Plaintiffs also each met with EOIR's Deciding Official, Mr. Henriksen, to discuss their reasonable accommodation requests and to provide additional details. Panian Decl. ¶¶ 43-47; Baxter Decl. ¶¶ 29-34.

### 3. Plaintiffs Can Perform the Essential Functions of Their Roles with the Necessary Reasonable Accommodation of Full-time Telework

Plaintiffs have also demonstrated that they can perform the essential functions of their roles with full-time telework accommodations. Both have teleworked full-time (under both telework accommodations and telework agreements) for years while serving as Attorney Advisors, and both have consistently received stellar performance reviews while doing so. Panian Decl. ¶¶ 32-39; Baxter Decl. ¶¶ 11-19. When denying Plaintiffs' telework requests, EOIR did not indicate that granting their requested accommodations "would require removal of [an] essential function." Panian Decl. ¶ 48; Baxter Decl. ¶ 35. And EOIR has never suggested that allowing Plaintiffs to telework would pose an undue hardship to the agency. Panian Decl. ¶¶ 45, 48; Baxter Decl. ¶¶ 30, 35.

To evaluate this element of a Section 501 claim, the Court considers whether (1) the requested accommodation is reasonable and (2) the plaintiff could perform the essential functions of the position had the employer granted the accommodation. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 580 (4th Cir. 2015). The plaintiff "bears the burden to identify an accommodation" and establish "that the accommodation is reasonable." *Smith*, 12 F.4th at 414 (quoting *Lamb v. Qualex*, 33 F. App'x 49, 59 (4th Cir. 2022)); *see also Williams*, 451 F. Supp. 3d at 475. Here, Plaintiffs have done both.

#### a. EOIR Has Conceded that Telework is Reasonable

A "reasonable" accommodation is one that is "feasible or plausible" and is "reasonable on its face, *i.e.*, ordinarily or in the run of cases." *Williams*, 451 F. Supp. 3d at 476-77 (citation omitted). The EEOC, which implements and enforces the Rehabilitation Act, published guidance

20

in 2002 stating that telework can be a reasonable accommodation.[4] Courts have repeatedly recognized the same. *See*, *e.g.*, *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994) ("in appropriate cases, . . . section [501] requires an agency to consider work at home, as well as reassignment in another position, as potential forms of accommodation"); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001) ("Working at home is a reasonable accommodation when the essential functions of the position can be performed at home and a work-at-home arrangement would not cause undue hardship for the employer."). EOIR has never suggested otherwise.

Indeed, EOIR is well positioned to provide telework reasonable accommodations for employees who require it. Telework became common practice for many employees, not just those with disabilities, during the COVID-19 pandemic. As of June 2024, almost ten percent of the federal workforce (over 200,000 employees) worked remotely at least some of the time.[5] In FY 2024, 28% of DOJ's 117,257 employees teleworked.[6] EOIR itself has effectively conceded that telework is reasonable as evidenced by the fact that, as of the date of this filing, it is actively hiring for full-time remote positions.[7] EOIR also permits supervisors to approve five situational telework days per quarter. Ms. Baxter's supervisor approved her for these five days in June 2026, and she is currently using these days to mitigate the risk she faces from being forced to return to work in-person. Baxter Decl. ¶ 44. Given this, it is unsurprising that during Plaintiffs' meetings with Mr. Henriksen, and in EOIR's subsequent denials of their telework accommodation requests, EOIR

---

[4] *See Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA*, EEOC (Oct. 17, 2002), https://perma.cc/ESH2-ZKQ3.

[5] *Federal Remote Work: OPM Guidance Could Help Relevant Agencies Evaluate Effects on Agency Performance*, GOA (Jun. 17, 2025), https://perma.cc/V3YC-TVAJ.

[6] These figures include both individuals teleworking as a reasonable accommodation for disability ("telework accommodations") and individuals teleworking under other policies or agreements. *Telework in the Federal Government Report to Congress: Fiscal Year 2024* at 10, U.S. Off. Of Pers. Mgmt. (Dec. 2025), https://perma.cc/EWN8-7BZR.

[7] *Immigration Judge*, USAJobs, https://perma.cc/WX6E-7BCZ (last accessed on May 29, 2026).

could not explain why it could not provide telework to Plaintiffs other than to say "assum[e]" EOIR will not approve it. Panian Decl. ¶¶ 43,45; Baxter Decl. ¶ 30.

### b. Plaintiffs Can Perform the Essential Functions of Their Jobs with the Necessary Accommodation of Telework

Both Plaintiffs have also demonstrated that they can perform the essential functions of their jobs provided they have the necessary accommodation of telework. *See* 29 C.F.R. § 1630.2(n).

As an Attorney Advisor, Ms. Panian conducts legal research, summarizes case law, reviews evidentiary records, drafts proposed orders and opinions, and advises Immigration Judges on complex legal issues. Panian Decl. ¶ 31. Her job duties are consistent with EOIR's written job descriptions for similar roles.[8] 29 C.F.R. § 1630.2(n)(3) ("[e]vidence of whether a particular function is essential includes . . . [w]ritten job descriptions" and the "current work experience of incumbents in similar jobs").

Ms. Panian has teleworked full-time since March 2020, under both telework accommodations and agreements. Panian Decl. ¶¶ 19-30. During the years she was teleworking, Ms. Panian received top ratings and glowing reviews in her yearly evaluations. *Id.* ¶¶ 32-39.

As an Attorney Advisor at LERS, Ms. Baxter is responsible for researching, improving, and preparing training programs, services, and technology to enhance EOIR's mission. She conducts comprehensive reviews of draft regulations, policy directives, operational concepts, and operational activities to use when drafting training materials. Ms. Baxter is also responsible for preparing a case law bulletin that is published each week, as well as assisting with responses

---

[8] Job Listing for Attorney Advisor GS-0905-13/14/15, DOJ (Apr. 4, 2025), https://perma.cc/KR5S-8AYD.

to Freedom of Information Act inquiries. Baxter Decl. ¶ 10. Her experience with her job duties is consistent with EOIR's written job descriptions for similar roles.[9] 29 C.F.R. § 1630.2(n)(3).

Ms. Baxter has teleworked full-time since March 2020, under both a telework accommodation and telework agreements. Baxter Decl. ¶ 11. During the period she was teleworking, Ms. Baxter received top performance reviews. *Id.* ¶¶ 12-19. For the performance review that encompassed the time Ms. Baxter worked under a telework accommodation, her supervisor wrote that she "consistently performed at a highly successful level in her role as an Attorney Advisor.*" Id*. ¶ 19. Ms. Baxter's meetings are also all virtual since none of her teammates work from the San Antonio office; it makes no functional difference to how her meetings operate whether she takes them from her home or the office. *Id.* ¶ 38.

Moreover, the medical documentation Plaintiffs provided EOIR in support of their requests for telework accommodations demonstrated that telework is necessary for them to perform, and continue performing, the essential functions of their job. *See Kelley v. Mayorkas*, 694 F. Supp. 3d 715, 728 (E.D. Va. 2023) (recognizing that plaintiffs must demonstrate their requested accommodation is necessary to perform the essential functions of the job). As detailed above, both Plaintiffs submitted detailed and uncontroverted evidence to EOIR showing that they require telework reasonable accommodations to do their jobs safely and effectively. *See supra* pp. 6-11; *see also* Panian Decl. ¶ 40("[d]ue to permanent chronic medical conditions, it is necessary for her to be accommodated to work remotely"); Baxter Decl. ¶ 23 ("remote work . . . would help ensure that she can to [*sic*] her job safely and effectively without undue burden" to EOIR).

---

[9] Job Listing for Attorney Advisor GS-13/14/15, DOJ (Apr. 25, 2025) https://perma.cc/Y3N4-URZ8.

### 4. EOIR Discriminated Against Plaintiffs by Refusing to Grant Their Requests for Telework Reasonable Accommodations

Finally, EOIR refused to grant Plaintiffs a reasonable accommodation because it failed to offer Plaintiffs any effective alternative accommodations and did not establish that Plaintiffs' requested accommodation—telework—was ineffective or unreasonable. Because telework would be an effective accommodation for Plaintiffs, and EOIR offered no other adequate alternatives, it is likely that Plaintiffs will establish that they were discriminated against in violation of the Rehabilitation Act.

To meet its obligations under Section 501, an employer must provide effective and reasonable accommodations. *See Reyazuddin*, 789 F.3d at 415. The employer "has the ultimate discretion to choose between effective accommodations" if it identifies multiple options. *Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019) (quoting *Reyazuddin*, 789 F.3d at 415–16). But the employer's duty to accommodate is not discharged by offering just any accommodation. *Fleetwood v. Harford Sys.*, 380 F. Supp. 2d 688, 701 (D. Md. 2005). If the offered accommodation will not "address the job-related difficulties presented by the employee's disability," it is not effective and the employer's obligation has not been satisfied. *Id.* at 699–700; *see also Reyazuddin*, 789 F.3d at 416 (holding that an employer must take steps to allow the employee "an opportunity to attain the same level of performance as is available to nondisabled employees having similar skills or abilities" quoting H.R. Rep. No. 101–485, pt. 2, at 66 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 349)).

Plaintiffs have demonstrated that they can perform their jobs with telework. EOIR has effectively conceded that telework is reasonable[10] and did not dispute that either Plaintiff can

---

[10] *See supra* Section I(B)(3)(a).

perform the essential functions of her job with telework.[11] And there is no doubt that EOIR denied Plaintiffs telework after they requested it.

While EOIR claimed that denying telework did not deprive Plaintiffs of their right to a reasonable accommodation, the agency's reasons are deficient on their face. Given that EOIR refused to grant Plaintiffs telework—or any other effective reasonable accommodation—Plaintiffs are likely to meet their burden on prong four and, with it, establish a prima facie claim of disability discrimination. And because EOIR has never claimed that granting telework would pose an undue hardship, and thus has not satisfied its burden to rebut the Plaintiffs' prima facie claim, Plaintiffs are likely to establish that the denial of telework constitutes disability discrimination in violation of the Rehabilitation Act.

### a. EOIR refused to grant Ms. Panian a reasonable accommodation

EOIR denied Ms. Panian's request for a telework reasonable accommodation. It rested its denial on three grounds: that she did not accept alternative accommodations offered, that she failed to provide sufficient medical documentation, and that telework is an "[i]neffective" accommodation. Panian Decl. ¶ 48. None of these reasons hold water.

First, EOIR's proposed alternative accommodations were ineffective. As Ms. Panian explained, the features inherent to working in the office—its remote location, poor cell service, lack of trained individuals to help in a medical emergency, her need for rapid administration of medication during a medical emergency, and the dangerously long time it could take in an emergency to get in and out of the building—pose immense risks to her health. Panian Decl. ¶¶ 40, 44, 46. If she does not receive medication and assistance immediately during a medical emergency, she could die. *Id.* The only accommodations Mr. Henriksen offered her, however, were

---

[11] *See supra* Section I(B)(3)(b).

in-office, and entirely unrelated to her "job-related difficulties." *See id.* ¶ 46; *Fleetwood*, 380 F. Supp. 2d at 699-700; *Hannah P.*, 916 F.3d at 337. EOIR thus failed to provide Ms. Panian with an effective alternative accommodation. *See Fleetwood*, 380 F. Supp. 2d at 699-700 (holding that a reasonable accommodation "must be effective").

Second, EOIR's claim that Ms. Panian did not provide sufficient medical documentation is incorrect and pretextual. Ms. Panian provided EOIR with all the documentation it requested. *See* Panian Decl. ¶ 40, 42. This documentation, which stated it is "necessary for her to be accommodated to work remotely," *id.*, is of a similar kind to the documentation EOIR had deemed sufficient to approve her telework reasonable accommodations many times in the past. *Id.* ¶ 19, 21, 24, 27, 40, 42.

Finally, Ms. Panian has already demonstrated that telework is an effective accommodation. Telework "address[es] the job-related difficulties" presented by her diabetes and severe migraines. *Fleetwood*, 380 F Supp. 2d at 699-700. It allows Ms. Panian to have backup medical equipment and trained individuals near her, and to reach a hospital more quickly, in the event of a medical emergency. Panian Decl. ¶ 40. It would thus address the precise disability-related concerns that make in-office work so dangerous for her. Accordingly, Ms. Panian is likely to show that EOIR refused her the only effective reasonable accommodation on the table: telework.

### b.  EOIR refused to grant Ms. Baxter a reasonable accommodation

EOIR gave two reasons for denying Ms. Baxter's telework accommodation request: that Ms. Baxter did not accept an alternative accommodation offered and that telework would be ineffective or inappropriate. Baxter Decl. ¶ 35. Neither of these reasons is correct.

Here too, EOIR's proposed alternative accommodations were facially ineffective. Because of chemotherapy, Ms. Baxter is extremely immunocompromised, and going into the office means being forced to come into contact with life-threatening germs. *Id.* ¶¶ 23, 31. Additionally, Ms.

26

Baxter needs to be able to move around during the day to avoid blood clots, something she could not do in the office because of the risk of encountering germs. *Id.* ¶ 31. Nevertheless, EOIR offered her only in-office accommodations, including a private office, ergonomic chair, and an air purifier. *Id.* ¶ 30. Because those accommodations would not address her "job-related difficulties," they do not constitute effective alternative accommodations. *Fleetwood*, 380 F. Supp. 2d at 699-700.

EOIR's assertion that telework would be an ineffective or inappropriate accommodation for Ms. Baxter is similarly wrong. As already explained, teleworking would enable Ms. Baxter to do her job while protecting herself against the severe health risks she faces going into the office. *Id*. ¶ 23. It would thus address the exact risks that she identified as requiring her to stay out of the office. Accordingly, Ms. Baxter is likely to show that EOIR refused her the only effective reasonable accommodation on the table: telework.

### c.  EOIR discriminated against Plaintiffs on the basis of disability

Because Plaintiffs are likely to satisfy all elements of demonstrating a prima facie claim of disability discrimination, and because EOIR has not attempted to carry its burden to rebut this claim by claiming any undue hardship attendant to their requests, they are also likely to establish that EOIR's actions amounted to disability discrimination in violation of the Rehabilitation Act. *See* Panian Decl. ¶¶ 48; Baxter Decl. ¶ 35; *Perdue v. Sanofi-Aventis U.S.*, 999 F.3d 954, 959 (4th Cir. 2021).

## II.    Plaintiffs Will Suffer Irreparable Harm Absent Relief

Plaintiffs have established that they will face imminent and certain irreparable harm absent injunctive relief directing EOIR to provide them full-time telework reasonable accommodations. Without preliminary relief, Plaintiffs will be forced to choose between going to work in-person and seriously endangering their health and their lives or staying at home and being put on disciplinary leave or subject to termination, thus losing their livelihoods and health insurance.

27

### A.  Imminent and Serious Risk to Plaintiffs' Health and Lives

As a result of EOIR's violation of Section 501, Plaintiffs must choose between jeopardizing their lives and their health by returning to work in person or risk losing their jobs and health insurance. Forcing a person to make such a choice constitutes irreparable harm. *Wiley v. Kennedy*, 789 F. Supp. 3d 447 (S.D.W.V. 2025).

EOIR's denial of Ms. Panian and Ms. Baxter's telework accommodation requests have compelled them to use personal and annual leave to avoid endangering their health by going into the office. Panian Decl. ¶ 55; Baxter Decl. ¶ 44. Ms. Panian will be out of available leave in a matter of weeks, by the end of June 2026. Panian Decl. ¶ 55. After that point, she will be forced to return to the office or face disciplinary consequences including termination. *Id.* ¶ 54. For Ms. Panian, who loves her job, wants to continue working, and relies on her job for her insurance and healthcare, this is not a real and meaningful choice. *Id.* ¶ 60. She will have to return to work in-person and thus face severe risks to her health, including the potential of having a life-threatening medical emergency without reliable access to emergency services and treatment. *Id.* ¶¶ 60-71.

Ms. Baxter has little remaining leave left. Although her supervisor has granted her five days of situational telework, she will soon have to return to work in person. Baxter Decl. ¶ 44. Every day she must report to the office, the risk to her health and her immune system accumulates and cannot be reversed. Ms. Baxter takes her responsibility to train EOIR's employees seriously because her training helps them perform their jobs successfully and further EOIR's mission. *Id.* ¶ 51. She wants to keep doing her job; but she wants to do it while "mak[ing] the best of the life [she] ha[s] left." *Id.* ¶ 54.

Courts have recognized that forcing a party to choose between their health and their livelihoods constitutes irreparable harm. In *Wiley*, for example, the court found that the Department of Health and Human Services' decision to terminate a lung-screening program

allowing miners to transfer to safer jobs "force[d] [coal miners]" to choose between their health and livelihood and thus imposed irreparable harm on the plaintiff-miner. *Wiley*, 789 F. Supp. 3d at 465. Forcing the plaintiff there to "[r]emain in a dusty job . . . may [have] reduce[d] the years in which [he] c[ould] walk and breathe unassisted, in addition to hastening his death. It is difficult to imagine a clearer case of irreparable harm." *Id.*

Section 501 was enacted to "spare [Plaintiffs] that choice" of deciding between their health and their job. *Id.*  Like the plaintiff in *Wiley*, the risks to Ms. Panian and Ms. Baxter's health cannot be reversed once they return to work in-person. EOIR's denial of Plaintiffs' telework accommodation requests forces them to choose between their health and their livelihoods, a choice that could ultimately come at the cost of their lives.

### B.  Denial of Equal Treatment

The "denial of equal treatment" itself is also an "injury in fact," regardless of whether individuals ultimately obtain the benefit sought. *Ne. Fla. Ch. of Assoc. Gen. Contractors v. City of Jack.*, 508 U.S. 656, 666 (1993). Thus, courts routinely hold that requiring individuals with disabilities to operate "under discriminatory conditions"—including by failing to provide necessary reasonable accommodations—"is itself a form of irreparable injury." *Bonnette*, 796 F. Supp. 2d at 187 (collecting cases); *Mathis*, 749 F. Supp. 3d at 25 (granting preliminary injunction to class representatives challenging federal government's supervision system's systemic failure to accommodate parolees with disabilities and finding that the government's failure to accommodate constitutes irreparable injury).

### III.    The Equitable Factors Strongly Favor Emergency Relief

The final two factors—the balance of the equities and the public interest—"merge when the Government is the opposing party." *Miranda*, 34 F.4th at 365 (quoting *Nken*, 556 U.S. at 435). These factors weigh heavily in favor of preliminary relief here.

The public—and therefore the government—"has a strong interest in the effective enforcement of the Rehabilitation Act." *Mathis*, 749 F. Supp. 3d at 25 (citation omitted); *see also Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 511 (D.C. Cir. 2016) (federal agency's harm "and the public interest are one and the same, because the government's interest *is* the public interest" (emphasis in original)). And "the public undoubtedly has an interest in seeing its governmental institutions follow the law." *Roe v. Dep't of Def.*, 947 F.3d 207, 230-31 (4th Cir. 2020) (quoting *Roe v. Shanahan*, 359 F. Supp. 3d 382, 421 (E.D. Va. 2019)) (quotation marks omitted). Moreover, Plaintiffs have provided strong evidence of irreparable harm that will only worsen as they run out of leave and are forced to return to work and put their lives at risk.

The federal government cannot claim that unlawful conduct is in the public interest. If preliminary injunctive relief is not granted, Plaintiffs will likely be terminated or forced to resign, leaving EOIR without two experienced attorney advisors to perform important government work and thus harming the public. Given that the federal government can claim no public interest in violating Plaintiffs' statutory rights, and given the ongoing irreparable injuries to Plaintiffs and life-threatening nature of the harms they are suffering, the balance of the equities weighs in favor of issuing preliminary injunctive relief.

## CONCLUSION

For all these reasons, the Court should grant Plaintiffs' motion for a preliminary injunction.

Date: June 17, 2026                              Respectfully submitted,

                                                 /s/ Catherine M.A. Carroll
                                                 Catherine M.A. Carroll (Va. Bar No. 50939)
                                                 Lauren A. Wetzler (Va. Bar No. 93902)
                                                 Anashua Dutta[+]
                                                 Louis Katz[+]
                                                 Elena Goldstein[+]
                                                 Democracy Forward Foundation

30

P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
Fax: (202) 921-4875
ccarroll@democracyforward.org
lwetzler@democracyforward.org
adutta@democracyforward.org
lkatz@democracyforward.org
egoldstein@democracyforward.org

Heidi Burakiewicz[+]
Sophia Serrao[+]
Burakiewicz & DePriest
1120 Connecticut Avenue NW, Suite 500
Washington, DC 20036
Phone: (202) 856-7500
Fax: (202) 217-2599
hburakiewicz@bdlawdc.com
sserrao@bdlawdc.com

*Counsel for Plaintiffs*

[+] Pro Hac Vice Motions Pending

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of June, 2026, I will cause the foregoing memorandum of law (and accompanying declarations and exhibits) to be electronically filed with the Clerk of Court using the CM/ECF system. I will then promptly cause those documents and a notification of such filing (NEF) to be sent to United States Attorney's Office Civil Chief Dennis Barghaan via email at dennis.barghaan@usdoj.gov.

/s/ Catherine M.A. Carroll
Catherine M.A. Carroll (Va. Bar No. 50939)

32